[S. F. No. 14437. In Bank.—November 1, 1932.]

ELKO MFG. CO. (a Corporation) et al., Respondents, v. L. C. BRINKMEYER et al., Appellants.

Thomas R. White and William M. Thornton for Appellants.

H. S. Henion and Fred B. Hart for Respondents.

WASTE, C. J.—Defendants appeal from a judgment in favor of plaintiffs canceling and rescinding certain contracts existing between the parties and decreeing that defendants refund to plaintiffs the sum of $3,550.94, expended by plaintiffs under the contracts.

The amended complaint is based on three theories. Primarily, the rescission is asked for on the ground that plaintiffs were induced to enter into the agreements by reason of certain false and fraudulent representations alleged to have been made by defendants. It is also alleged that there was a failure of consideration and that defendants abandoned the contracts. The trial court found that all of the allegations of the complaint were true and likewise made extensive findings in reference to all the transactions between the parties. A reading of the record readily discloses that the case was tried almost entirely on the theory that plaintiffs were induced to enter the contracts by reason of certain representations alleged to have been made by defendant L. C. Brinkmeyer in reference to his title to the properties involved. It is contended that such representations were false and that plaintiffs relied upon them to their damage. The failure of consideration and abandonment issues were involved only incidentally and only imperfectly developed at the time of trial. Appellants first contend that the findings

in reference to the alleged false representations are not sustained by the evidence. In the second place, appellants contend that, even if such findings are supported, the record conclusively shows that after the plaintiffs became fully aware of the falsity of the representations they voluntarily canceled all prior agreements and entered into a new written contract. This last contract, appellants contend, was not affected by the alleged fraud. In order properly to discuss either of these contentions, it is first necessary to recount the facts giving rise to this controversy. In this summary of the facts, it should be mentioned that we have resolved all conflicts in favor of plaintiffs, as we are bound to do under well-settled principles.

During the year 1929 defendants owned certain mining lands and claims in the state of Nevada. Defendant L. C. Brinkmeyer had in his possession certain secret formulae for the making of soap and other products from the ore on said lands. Both Brinkmeyer and the individual plaintiffs were desirous of exploiting these properties. After several meetings, on March 13, 1929, the parties entered into a written agreement whereby Brinkmeyer agreed to sell and the individual plaintiffs agreed to buy the mines, claims and formulae at an agreed price of $150,000, on specified terms. This agreement will hereafter be referred to as the "first" contract. Defendant Margaret Brinkmeyer was not named in the agreement as a party to it, but signed it as the "wife of L. C. Brinkmeyer". By the terms of this first agreement, the plaintiffs agreed to form, at their own expense, a Nevada corporation, and to do or cause to be done at their own expense all annual work required by the government to be done on the mining claims. The trial court found that the plaintiffs were induced to enter into this agreement by reason of the representations made by the defendants that they were the owners of the real and personal property involved, and had a good and merchantable title thereto sufficient to obtain a permit from the corporation department of the state of California to sell the stock and securities of the Nevada corporation to be formed, and that there was nothing in the past record of the defendants or of the properties that would debar or prevent the issuance of the permit. It should be mentioned that neither the first agreement nor any of the other written contracts

entered into between the parties contained any such warranty of ability to secure a permit. However, the record does support the finding that some such oral representations were made by L. C. Brinkmeyer, although, even according to the testimony of plaintiffs, the representations were not as clear or as explicit as found by the trial court. As to whether such representations were false, as found by the trial court, more will be said later in this opinion.

In pursuance to the first agreement, a corporation, the plaintiff Elko Manufacturing Company was formed in Nevada. On March 21, 1929, the defendant L. C. Brinkmeyer and the new corporation entered into a new written agreement. This agreement will hereafter be referred to as the "second" contract. By the terms of this agreement, Brinkmeyer agreed to sell to the corporation the mining property and claims and the formulae described in the first agreement. The second agreement provided for a new and complete arrangement for the payment for the properties. One of the plaintiffs testified, and it was undoubtedly the fact, that this second agreement "took the place of the contract of March 13". It is worthy of mention that at all times after the first agreement was entered into plaintiffs were represented by an attorney and that all of the arrangements plaintiffs had with L. C. Brinkmeyer were first scrutinized by him.

After the Nevada corporation had been formed, and after the second contract had been executed, an application was made to the corporation department of the state of California for a permit to sell stock. The application in due course was referred to a Mr. Wyman, who was connected with the corporation department in its Sacramento office. Several conferences were held with Wyman, all the plaintiffs and their attorney, and L. C. Brinkmeyer and his attorney being present. At these conferences all of the facts in reference to the past history of the properties and Brinkmeyer's connection therewith were divulged. It appeared that four other corporations had had some dealings with L. C. Brinkmeyer in reference to these properties. The corporation department was not satisfied that the various contracts between Brinkmeyer and these four corporations had been effectually terminated, nor was the department satisfied with the status of the record title to the real properties.

On April 22, 1929, Wyman wrote to one of the attorneys for plaintiffs, informing him that before the permit could be granted "certain matters" had to receive "further consideration". These matters were itemized as follows:

1. The department desired a complete abstract of title to the real property.

2. Various provisions of the second contract in reference to the amount to be paid for the properties were found to be excessive.

3. The amount of promotion stock provided for in the second contract was found to be excessive.

4. The department desired a complete history and explanation of the transactions of Brinkmeyer with the other four corporations.

Under the circumstances, and after plaintiffs and their attorney had full knowledge of all the prior transactions in reference to the properties, and after the plaintiffs and their attorney had full and complete information as to what was to be required in order to secure a permit, L. C. Brinkmeyer and Elko Mfg. Co. entered into a new agreement on May 10, 1929. This agreement will hereafter be referred to as the "third" agreement. It is entitled "Amended Option to Sell Real Property." It refers to the second contract and recites that because "certain changes have arisen necessitating a change in said option, this amended option is hereby substituted" and it further states that "this amended option cancels any and all previous options and agreements made and entered into by and between the parties hereto or L. C. Brinkmeyer and T. A. Bowen, Harry Bartell, and John Le Grand". This third agreement provides for new terms of payment for the properties and for a different stock setup. There is no dispute but that these new provisions were intended to meet and apparently did meet the objections numbered 2 and 3 in Wyman's letter. The third agreement specifically recognized that difficulties might arise in the securing of a permit. It recited that the "parties hereto agree to use their best endeavors to obtain a permit"; that Brinkmeyer had already received $2,500 from plaintiffs; that no further payments should be made to him until the objections of the corporation department were removed. The agreement specifically enumerated the past transactions of Brinkmeyer with the other corpora-

tions and stated that because thereof the corporation department had certain objections to granting a permit; that in the event such objections were removed, Brinkmeyer was to receive a $1,000 payment "regardless of whether the said Permit is or is not issued"; that if the permit is not issued within 30 days the Elko Mfg. Co. "may cancel this option" by giving Brinkmeyer "fifteen days written notice of such cancellation; that if the objection is not removed within fifteen days thereafter, then this option is to be cancelled". Brinkmeyer agreed to furnish an "abstract of title of said real property, showing a good and marketable title in and to the said real property and all of it free and clear of all encumbrances". Brinkmeyer likewise agreed to hold the Elko Mfg. Co. free and harmless from all claims or litigation involving the property and from all claims of the prior corporations or their stockholders, and to defend all suits at his own expense. The agreement then contained this clause: "It is further mutually understood and agreed that nothing contained in this amended option, or the present negotiations and endeavors to obtain said permit from the California State Corporation Department, shall waive any rights that the said party of the second part may have against the said party of the first part, to misrepresentation as to the title, encumbrances or records of the real property and formulas herein involved."

After the third agreement had been executed another effort was made to secure a permit. All the parties participated in good faith in this effort. The corporation department transferred the application to the San Francisco office. Brinkmeyer secured a letter from the attorney for one of the old corporations, explaining as best he remembered, its relation to the properties; a telegram from the secretary of state of Delaware as to the status of another; and secured the signature of the president of another of the old companies to a letter prepared by plaintiffs' attorney. He compromised satisfactorily to the commission a claim of a Mr. Ferris. He likewise furnished, as required by the third contract, an abstract of title to the Nevada properties, showing that according to the Nevada records his title was clear. The representative of the corporation department was not satisfied. Although there is some confusion in the testimony, it appears that the representative

of the corporation department finally agreed that he would recommend the granting of a permit on condition a title insurance policy insuring the title to the patented claims was presented. Brinkmeyer refused to pay for this title insurance policy, properly claiming that under the contract he was to supply only "an abstract of title", which he had done. The plaintiffs likewise refused to advance the $215 necessary to secure the policy. As a result, the corporation department did not issue the permit, but eventually considered the application therefor "withdrawn". No further effort was made by anyone to secure it.

Another fact should be mentioned. The plaintiffs refused to do or pay the expense for doing the necessary annual assessment work on the unpatented claims, as provided for in the contract. Brinkmeyer made demand that such work be done, but upon plaintiffs' refusal, was forced to have the work done at his own expense.

Early in July, 1929, a meeting of all the directors of Elko Mfg. Co. was held, all the parties to this action, other than Mrs. Brinkmeyer, and their attorneys being present. At that meeting, plaintiff Bowen, apparently on behalf of all the plaintiffs, stated that the corporation would not go further with the deal. After a rather stormy meeting, Brinkmeyer tendered his resignation and left the meeting. A few days later he was served with a notice of rescission and a demand for all moneys.expended by plaintiffs under the contracts. The notice of rescission purports to rescind "all contracts or agreements had with you by us or any of us, particularly that certain amended option . . . dated May 10, 1929". The grounds of rescission as stated in the notice are "fraud, deceit and misrepresentations in the negotiations leading up to the execution of said amended option, and failure to comply with the terms and conditions of said agreements and amended option thereafter made by the said L. C. Brinkmeyer, all of which resulted in inducing the undersigned to pay him the sum of Twenty-five Hundred and 00/100 ($2500.00) Dollars and incur certain incidental expenses to the giving of the said amended option and in furtherance of said option and agreements, and on the further ground of failure of consideration."

On these facts a general judgment was entered for the plaintiffs against both defendants for the cancellation of

"all" agreements between the parties and for the amount of money ($3,550.94) paid by plaintiffs to L. C. Brinkmeyer on account of the purchase price of the property and otherwise expended by them in connection with the contracts.

As already stated, the main theory upon which the case was tried and decided was that defendant L. C. Brinkmeyer had made false statements as to the status of his title and his ability to secure a permit and that plaintiffs, believing the statements to be true, had relied thereon to their damage. Although there can be no doubt that the evidence supports the finding that such representations were made, we are not convinced that the record supports the finding that the representation that he had good title was false. The burden of proof was, of course, on plaintiffs to prove all the elements of their cause of action. It seems to be admitted by all concerned that the Brinkmeyers had a good record title to all the patented claims. It is true that the transcript is replete with references to the other corporations with whom Brinkmeyer had dealt in reference to the properties, but we have been referred to no positive and convincing evidence, nor have we found any such evidence that any of these corporations had any valid claim against the properties. It is true that the corporation department did not grant a permit, but this refusal was predicated on the failure to furnish a title policy in reference to the real properties. As to these properties, all are agreed the record title was clear. Brinkmeyer was not required by the contract to furnish the policy. He was required to furnish only an abstract of title, which he supplied. Under such circumstances, it is difficult to find any support for the finding that the representation as to title was false. As to the representation that no trouble would be had in securing a permit, it is our opinion that such a representation, under the facts of this case, was a statement of opinion and not of fact. It must be remembered that the individual plaintiffs are all experienced business men who at all times were represented by counsel of their own choosing. Although we are well aware of the rule that this court cannot reject findings based on conflicting evidence, we are of the opinion that the findings that the alleged representations were false are not supported by the evidence.

■ However, even if we assume for the purposes of this opinion that the first and second contracts were induced by fraud, the unquestioned fact remains that when the third contract was entered into on May 10, 1929, all the plaintiffs and their attorney had actual knowledge of the status of Brinkmeyer's title to the properties, and knew of all the difficulties that would have to be overcome to secure a permit. In other words, if we assume the representations as to title and ability to secure a permit were false, plaintiffs and their attorney had full knowledge of their falsity. Having this knowledge, plaintiffs' own counsel prepared the third contract and expressly provided therein that it was intended as a substitute for the other contracts, and that it canceled any and all previous options and agreements between the parties. The third contract expressly recognized the difficulties in reference to the securing of a permit and provided in detail as to what was to happen if the permit was or was not granted. Under such circumstances, it cannot successfully be contended that the third contract was induced by fraud. It is elementary, of course, that even if false representations are made, no cause of action arises unless there is reasonable reliance placed thereon by the other contracting parties. Certainly there can be no reliance where actual knowledge of the falsity of the statements exists. Nor can it be contended successfully that all three of the contracts were part of one transaction. Not only did the third contract expressly provide to the contrary, but plaintiffs testified that such was not their intent.

■ The clause in the third contract, quoted *supra,* attempting to preserve any cause of action for fraud, does not in any way alter the fact that the third contract, which, after its execution, was the only contract existing between the parties, was not affected by the alleged fraud. To give that clause the effect of keeping alive the alleged cause of action would be to permit a party to state that he will voluntarily cancel and extinguish all prior contracts; that he will enter into a new contract; that he now knows certain representations made by the other contracting party were false when made; that he does not now rely on them; but that he still retains a cause of action for inducing the last contract for fraud. Such an interpretation does not appeal to our reason or justice. This is an action for rescis-

sion based on fraud. As to the contract sought to be rescinded, there was no fraud. It therefore follows that it cannot be rescinded on that ground.

In reference to the alleged cause of action for failure of consideration and abandonment little need be said. For reasons already stated, we are of the opinion that defendants did all that was required of them under the contract. Moreover, plaintiffs themselves testified that they rescinded not because of Brinkmeyer's alleged repudiation, but solely because they could not get a permit. The third contract expressly provided for a method of cancellation. Plaintiffs did not elect to follow the procedure there provided, but elected to rely on fraud. As we have already seen, this charge they failed to substantiate.

For the foregoing reasons the judgment appealed from is reversed.

Shenk, J., Preston, J., Seawell, J., and Curtis, J., concurred.

Rehearing denied.