[Civ. No. 15794.   First Dist., Div. Two.   Sept. 20, 1954.]

MABEL B. JOHNSTON, Appellant, v. WALTER S. JOHNSON et al., Respondents.

J. W. Ehrlich for Appellant.

Brobeck, Phleger & Harrison, Evan Haynes, Bailey M. Lane, Pillsbury, Madison & Sutro, Eugene M. Prince, Samuel L. Wright, M. C. Sloss, Frank H. Sloss and Sloss & Eliot for Respondents.

NOURSE, P. J.—Plaintiff, the former wife of defendant Walter S. Johnson, in October, 1945, instituted this action, claiming a half interest in 62½ shares of common stock of Friden Calculating Machine Company, Inc., the further stock derived therefrom, the dividends paid thereon, et cetera, which original shares her husband allegedly owned as community property on May 8, 1936, when a property settlement agreement was signed by them at the time of the interlocutory decree in their divorce action, and which ownership allegedly was fraudulently concealed from her pending the division of their property in accordance with said agreement, by means of an ostensible prior transfer of said stock to defendant C. T. Gruenhagen. (The division was completed late in 1936.) Plaintiff alleged that she had no knowledge of said stock and its ownership until September, 1945. The answer, among other things, denied the fraudulent character of the transfer and pleaded the statute of limitations based on several code sections. The trial took place early in 1948. The court, sitting without a jury, in July, 1949, filed an opinion favorable to plaintiff in which the transfer was considered fraudulent and the action not barred by the statute. However, before the findings had been settled, the trial was reopened on motion of defendants mainly to hear further evidence of Donovan O. Peters, the attorney of Mrs. Johnson in the divorce action and the division of the property. After his evidence and rebuttal evidence for plaintiff had been received in October, 1951, the court ordered judgment for defendants. The findings were to the effect that defendant Johnson had disclosed all his assets, that all had been divided between the parties and that plaintiff had knowledge of the matters complained of in this action more than five years next preceding the commencement of the action so that the action was barred by the statute in

accordance with the code section cited by defendants. Motion for a new trial was denied and plaintiff appeals.

She does not contend that the findings are not supported by the evidence. Her grievances are in substance that (a) the reopening of the trial at the time and for the purpose stated, considering the preponderance of the evidence of fraud, was error and an irregularity in the conduct of the trial by the court for which a new trial should have been granted, and (b) the plaintiff was at any rate entitled to one-half of the common stock in question because the transfer of it was void for failure to obtain consent of the Corporation Commissioner in violation of the provisions of an escrow ordered by said commissioner.

In relation to point (a) the parties argue at length the weight of the evidence as to the fraudulent or non-fraudulent character of the transfer agreement between defendants Johnson and Gruenhagen. This agreement was put in writing on January 15, 1936, after, according to the allegations and testimony of defendants, having been agreed on orally prior to that date. It is undisputed that the Friden Company had been incorporated in January, 1934, and a permit for the issuance of 500 shares of capital stock issued May 21, 1934; 250 shares to Carl Friden and his wife (in exchange for his invention and assets) and 250 in four equal parts to Johnson, Gruenhagen and two other business associates of theirs who each furnished $6,250 cash. The permit required that the certificates be held in escrow and forbade consummation of any transfer without consent of the commissioner. Marion Vecki, attorney for the company, was made escrow holder. The group of four investors soon had to furnish more capital by way of equal loans which, in July, 1935, were consolidated into 98 shares of preferred stock for each at $100 a share. The original capital stock became common stock (which holds the voting power). Common and preferred stock was ordered held in escrow on the same conditions as the original capital stock with Mr. Vecki as escrow holder. In the agreement dated January 15, 1936, Johnson sold to Gruenhagen all his common stock (62½ shares) and in consideration therefor Gruenhagen sold Johnson 62½ shares of preferred stock, the transfer to be completed and recorded as soon as the stock was released from escrow. It is practically conceded that the agreement was made to prevent any of the voting stock to come in the hands of plaintiff in case of divorce. This was of great im-

portance to the group of four investors who together had the same number of votes (250) as the Friden group. It is, however, the position of defendants that the agreement was not fraudulent as the common and preferred stock had cost the investors the same ($100 each) and the value of a share of common stock at that time was allegedly not greater than that of a share of preferred stock. Before their stock certificates were deposited with Mr. Vecki, Johnson endorsed his certificates for 62½ shares of common stock to Gruenhagen and Gruenhagen endorsed the transfer of 62½ shares of his preferred stock to Johnson on his certificate of 98 shares of preferred stock. A copy of their exchange agreement was also deposited with Mr. Vecki. The property settlement of May 8, 1936, provided mainly for an equal division of all property whatever of the parties as of the fair market value on that date, on the basis of inventories to be prepared by their accountants. The inventory prepared by defendant Johnson's accountants mentioned property of a value around one million dollars, among which 160½ shares of Friden preferred stock (i.e., Johnson's original holding of 98 shares plus the 62½ shares transferred to him by Gruenhagen) with a statement that the stock was in escrow. In the division of the property half of these 160½ preferred shares were allotted to plaintiff and she received them after all stock had been released from escrow. In 1939 Mr. Johnson purchased from Gruenhagen 62½ shares of common stock in the Friden Company for $100 a share. During the war the company and the value of its common stock grew considerably. How far a favorable development had gone at the time of the sale in 1939 is disputed.

No useful purpose would be served by stating any of the evidence and arguments as to the fraudulent or bona fide character of the agreement between defendant Johnson and Gruenhagen. The additional evidence of Mr. Peters at any rate threw a new light on the question of plaintiff's knowledge of the agreement and its character at the time of the division of the property, of essential importance as to plaintiff's lack of reliance on the alleged misrepresentations and as to the pleaded bar of the statute; the affidavit of Mr. Peters, which accompanied the motion for reopening of the trial, clearly shows what his testimony would be. The importance of the intended testimony as to these points in itself justified the reopening of the trial.

The substance of Mr. Peters' testimony after the reopening of the case and after having refreshed his memory by studying

exhibits in the case at the request of the attorney of defendant Johnson was as follows:

Mrs. Johnson and Mr. Peters, as her attorney, were very suspicious of anything that was told them by Mr. Johnson or Mr. Vecki; no statement of theirs would have made any difference; they would not have believed it. Mr. Peters demanded an accountant's report as to the properties of the parties as basis for negotiating the settlement. The report provided by Mr. Johnson was the Robinson-Nowell report of March 30, 1936. That report mentioned among the assets 160½ shares of Friden Calculating Machine Company preferred in escrow. As Mrs. Johnson had told him that there was a Friden venture in which Mr. Johnson was the controlling influence, Mr. Peters wanted to examine the escrow to see what had happended to the common stock. He had written in the above report over "preferred stock" "common and ?". He arranged with Mr. Vecki to see the escrow file at Mr. Vecki's office. This was shortly after he received the Robinson-Nowell report. He looked through the whole folder. Among other things he saw the original stock certificates and notice that the certificate for 62½ shares of common stock of Mr. Johnson had on its reverse an endorsement to Mr. Gruenhagen and that the reverse of the certificate of preferred stock of Mr. Gruenhagen contained an endorsement to Mr. Johnson. The endorsements were not dated but the certificates themselves were dated August, 1935, which gave him the impression that the transfer was recent. It made him suspect some sort of transfer for convenience, some manipulation, fraudulent transfer to evade division, especially because Gruenhagen was a close business associate of defendant Johnson with a family connection. He questioned the transaction in his mind and thought of the possibility of a litigation to set aside the transfer if they decided to challenge it. On further inquiry he might find sufficient facts for such action. However he did not investigate further and did not advise such procedure. He reasoned it would be expensive with possibly a doubtful result and at any rate unprofitable. There was a chance to recover the common stock in the litigation, but the preferred stock was the consideration for it, and the preferred stock was more desirable, being preferred as to assets. Whether the transaction was bona fide or not was no concern of theirs because they did not want any interest in the Friden Company. He thought it undesirable for a woman like Mrs. Johnson to

have an investment in it, because he considered it at that time a small corporation in its early beginning stages of which it was problematic whether it would be successful and the future success of the investment might require putting in additional capital. Moreover, she would be in a virtual partnership with Mr. Johnson who was personally active in the corporation and could, if he wished, run the profit to another company. It was better for Mrs. Johnson to have cash and sound listed securities as to which she could be guided by investment counsel. Mr. Johnson would be better able to make something out of the small speculative ventures like the Friden one, of which there were four or five among the assets.

As soon as possible after the investigation of the escrow he informed Mrs. Johnson of its results  He discussed his ideas thoroughly with her and gathered in the discussion that she thought just as he did. He wanted her to understand his recommendations and he was confident that she understood his reasoning and concurred. The determination that it was not advisable to attempt to set aside the transfer was made after discussion with Mrs. Johnson.  He obtained her concurrence that it would be better not to take any of the stock even though he could get common, before proposing accordingly to Mr. Vecki. The proposal was made as part of a Tentative Schedule of Division. Mr. Peters proposed to allocate all 160½ shares of preferred stock to Mr. Johnson at the value of $16,000 as credit in the division. The Tentative Schedule was not dated but was sent not long after the Robinson-Nowell audit of March 30, 1936, and a letter of Mr. Vecki of May 28, 1936, commented on it (and refused to accept for Mr. Johnson more than half of the preferred stock).

From the above the court could conclude that not later than May, 1936, appellant knew of the exchange agreement and of its possible fraudulent character and in accordance with the advice of her attorney decided not to attempt to set aside said transfer, without relying at all on the truth of the stated ownership of the preferred stock only. The credibility of Mr. Peters and the solving of possible conflicts with his earlier testimony were wholly for the trial court.

This is not a case like *Milekovich* v. *Quinn,* 40 Cal.App. 537 [181 P. 256] and *Lorraine* v. *Lorraine,* 8 Cal.App.2d 687 [48 P.2d 48], cited by appellant, in which part of the property to be divided was simply secreted from the wife.  Here the plaintiff knew that the property in which she claims an interest had been property of the parties and was by agree-

ment exchanged for other property available for division and accepted as such by her. Her claim of an interest in the property transferred in said agreement by her husband is then dependent on an attack on said agreement as fraudulent.

█ For any action based on fraudulent misrepresentation, reliance on the truth of the false statement is an essential element. (Civ. Code, § 1568; *Elko Mfg. Co.* v. *Brinkmeyer,* 216 Cal. 658, 666 [15 P.2d 751]; *Podlasky* v. *Price,* 87 Cal. App.2d 151, 158 [196 P.2d 608].) Here there was not only no reliance on the statement in the report but an election to treat the contract as valid notwithstanding consciousness of its suspicious circumstances. █ Moreover, the action would at any rate be barred by the three year period of limitation of section 338, subdivision 4, Code of Civil Procedure, as found by the trial court. The period of limitation commences to run as soon as the aggrieved party discovers either the facts constituting the fraud or facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 437 [159 P.2d 958]; *Douglas* v. *Douglas,* 103 Cal.App.2d 29, 32 [228 P.2d 603].) Under this rule the statute commenced to run in this case in May, 1936.

Appellant's contention that it was an abuse of discretion to reopen the trial to receive the evidence of which it was shown above that it was of decisive relevancy, is not based on any authority. █ The authorities hold that the reopening of a case for further evidence is entirely within the discretion of the trial court and favor such reopening at any time before final decision if the reopening will tend to promote justice by bringing all facts before the court. The opposing party has no right to complain on appeal if he was given full opportunity of rebuttal. (24 Cal.Jur. 768-769; *Badover* v. *Guaranty Trust & Sav. Bank,* 186 Cal. 775, 777-778 [200 P. 638]; *Kaliterna* v. *Wright,* 94 Cal.App.2d 926, 933 [212 P.2d 32]; *Bell* v. *Towns,* 95 Cal.App.2d 398, 401 [213 P.2d 73].) In this case the opportunity of rebuttal was given and was used by plaintiff who testified herself. There is here neither abuse of discretion nor undue prejudice.

█ Neither is there any merit in the contention that the granting of the reopening was an irregularity which prevented plaintiff from having a fair trial and entitled her to a new trial as a matter of law. The granting of a new trial is largely in the discretion of the trial judge who in this case was certainly best able to decide whether the time elapsed

between the original trial and the taking of new evidence prevented him from grasping the significance of the evidence in its entirety apart from the question whether the reopening could be considered an irregularity at all.

(b) Neither can appellant's claim to half of the common stock be sustained on the ground that the transfer of said stock by her husband violated the provision of the escrow against consummation of a transfer of escrowed stock without previous written consent of the commissioner. The absence of such consent is undisputed. There may be doubt whether there was a violation because the provision in the exchange agreement that the transfer would be completed and recorded when the stock was released from escrow, might indicate that the transaction was not intended to be consummated before that time; however, the use of the word "sell" in the agreement, the endorsement of the stock certificates and the treatment of the exchange as perfected in the report of defendant Johnson's accountants of March 30, 1936, point to consummated transfers violative of the above escrow provisions. But even if this is accepted in accordance with appellant's contention it cannot avail her.

It is contended by respondents that she was not at any time in a position to attack the exchange on that ground. This seems doubtful. Defendant Johnson, who was in pari delicto with defendant Gruenhagen, could not have brought action to recover what he had transferred in the exchange (*Domenigoni* v. *Imperial Live Stock & Mtg. Co.,* 189 Cal. 467, 475 [209 P. 36], but should his wife in attacking an illegal agreement made by him with respect to community property be considered to claim under him and to be affected by his fault in a transaction over which she had no control? (Civ. Code, § 172; *Berniker* v. *Berniker,* 30 Cal.2d 439, 447 [182 P.2d 557].) ■ Although as a rule only the parties and those claiming under them can invoke the illegality of an agreement (*Kyne* v. *Kyne,* 16 Cal.2d 436, 439 [106 P.2d 620], appellant's community interest might bring her under a logical exception to said rule recognized in 17 Corpus Juris Secundum, 671-672, for the case where the "interests of the person asserting the invalidity are affected."

■ However, even if originally appellant would have had the right to attack as illegal the exchange agreement of which she accepted half of the proceeds, that cause of action would have been barred by the statute at the time she filed this action. ■ An action for recovery of payments made under a void

contract was held to be barred under the two years limitation of section 339, subdivision 1, Code of Civil Procedure in *Smith* v. *Bach*, 53 Cal.App. 63 [199 P. 1106] (compare also *Marshall* v. *Packard-Bell Co.*, 106 Cal.App.2d 770, 773 [236 P.2d 201]). The statute begins to run from the time the action accrued (Code Civ. Proc., § 312), which in such cases is normally when the transfer attacked is made (*Smith* v. *Bach*, *supra*). ▆▆▆ Ignorance of the existence of the facts constituting a cause of action ordinarily does not prevent the running of the statute (*Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 566 [165 P.2d 260].) There are situations in which it is held that the statute does not start running at the time of the occurrence which gives rise to the action, but only from the discovery by the aggrieved party of the facts giving rise to the cause of action or of facts putting him on inquiry. Such rule is contained in section 338, subdivision 4, Code of Civil Procedure as to relief on the ground of fraud or mistake. The same rule is applied when the facts giving rise to a cause of action are fraudulently concealed from the party aggrieved. (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]); to actions on involuntary trusts (*Truesdail* v. *Lewis*, 45 Cal.App.2d 718 [115 P.2d 218]); to claims for compensation for industrial injury (*Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563]); to malpractice suits (*Huysman* v. *Kirsch*, 6 Cal.2d 302 [57 P.2d 908]). We do not see any category of exception under which our case can be brought. *Smith* v. *Bach*, *supra*, at page 64, contains a restriction "there appearing no equitable consideration relieving [the plaintiff] from the effect of the [general] rule." It is not clear whether this refers to the exceptions mentioned before, but even if there could be a more general application of equitable considerations as to the commencement of the running of the statute, there seems to be no equity in appellant's position. She has no legitimate interest in the fact that there was no previous consent where the escrow was released by the commissioner long before she instituted this action.

▆▆▆ Even if the statute would run only from discovery such would be an exception and the burden would be on the plaintiff to plead and prove that she did not discover the cause of action longer before the institution of the action than the term of the statute applicable (*Hobart* v. *Hobart Estate Co.*, *supra*, 26 Cal.2d 412, 437). ▆▆▆ The finding of the court

that the action is barred by section 339, subdivision 1, Code of Civil Procedure implies a finding that appellant did not prove such recent discovery. On appeal no showing whatever is made that the recent discovery was proved as a matter of law.

All the above would equally apply if to the causes of action here involved other provisions of the statute of limitations also found by the court should apply, to wit: section 338, subdivision 3, Code of Civil Procedure (recovery of personal property), section 337, subdivision 1 (on instrument in writing), section 343 (catch all provision).

As the judgment must at any rate be affirmed on the above grounds, other points urged by the parties need not be treated.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 17, 1954.