TAYLOR, J. pro tem.
 
 *
 

 filed an action for dam-
 

 Plaintiffs ages for fraud alleged to have been committed by the defendants in the sale of a residential lot. The case was tried before the court without a jury. At the close of the plaintiffs ’ case, the court granted defendants’ motion for a nonsuit. Plaintiffs appeal from this order.
 

 The material facts, as viewed most favorably to the plaintiffs, are as follows. The plaintiffs bought a lot for $15,500 in an exclusive subdivision in Hillsborough. Defendant Car-
 
 *66
 
 man handled the sale as an employee of defendant Coldwell, Banker & Company who in turn were the exclusive sales agents for the developer defendant Ernest Ingold. After viewing several properties with Carman, the plaintiffs decided to purchase the lot in question. On February 17, 1957, Carman took them to Coldwell, Banker’s San Mateo office where plaintiffs made a $1,500 deposit and signed the purchase agreement. Before executing the agreement, the plaintiffs observed a small subdivision map which showed a 30-foot wide easement in the City and County of San Francisco crossing the front of their lot. The defendant Carman also handed them a subdivision report which they read and which stated the title was subject to easements of record. Plaintiff Mrs. Brady asked defendant Carman what an easement was. He answered, “Oh, Mrs. Brady, that is nothing for you to worry about. It is these water pipes that you find on the curb of the street.” And again he said, “That is all it is.” The plaintiffs then signed the purchase agreement. Subsequently, but before the closing date, Carman furnished the plaintiffs with a copy of a preliminary title search listing the 30-foot easement as an exception to the title, and a larger subdivision map showing its location. Plaintiffs read the report, and Mrs. Brady testified as follows: “A. I called him up on the telephone. I wanted to know what the effect of a 30-foot easement was. He says, ‘Mrs. Brady, you don't have any easement on your lot.’ I says, ‘Mr. Carman, do you mean to tell me it is not on my lot ? ’ ‘ It is not on your lot; it is on the side of your lot. ’ He reassured me not to worry. I had no easement. Q. You had an easement on the side of your lot and no easement on the front? A. Not to worry is what he told me.”
 

 About three months later, while plaintiffs were constructing their house, the City and County of San Francisco dug a ditch 16 feet deep and installed a large water pipe in the easement. This interference did not add to the cost of construction, but the plaintiffs chose to make a change in the location of their driveway, rather than to rely on a revocable and restrictive permit from the San Francisco Water Department, one of the provisions of which was that plaintiffs must stand the cost of removing and replacing improvements within the easement at any time they interfered with the use by the city.
 

 Scranton, a real estate appraiser, was qualified as an expert witness by the plaintiffs and testified that he had examined the property and the easement deed which was in evidence and
 

 
 *67
 
 that it limited the use of the plaintiffs’ property in that they had “little more than the right to cross it, and then only under somewhat limited . . . circumstances. ...” It was his opinion that the market value of the property, thus burdened by the easement, was $5,000 on February 17,1957. The plaintiffs testified that had they known the extent and nature of the easement they would not have purchased the property. The complaint prayed for $10,000 compensatory damages and $10,000 punitive damages.
 

 The issue is whether by the standard of review required on appeal from a nonsuit, the evidence disclosed actionable fraud by the defendant Carman in selling the property to the plaintiffs and if so could the evidence further justify the allowance of either compensatory or punitive damages. Agency was not denied by any of the defendants and fraudulent conduct by defendant Carman would impose liability on the other defendants under the doctrine of
 
 respondeat superior.
 

 “ ‘A
 
 motion for nonsuit may properly be granted “. . . when, and only when,
 
 disregarding conflicting evidence,
 
 and giving to plaintiff’s evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.” ... “Unless it can be said as a matter of law, that ... no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.”. . ”
 
 (Seneris
 
 v.
 
 Haas,
 
 45 Cal.2d 811, 821 [291 P.2d 915, 53 A.L.R. 2d 124], quoting other cases.)
 

 Having this well established rule in mind, we will first discuss the question of fraud. Fraud is any act fitted to deceive. (Civ. Code, § 1572.) A single material misstatement knowingly made by a vendor and relied upon by the vendee will sustain an action for fraud.
 
 (Davis
 
 v.
 
 Butler,
 
 154 Cal. 623, 626 [98 P. 1047].) “
 
 ‘A
 
 purchaser has a right to rely on the representations of the vendor as to the facts not within the purchaser’s knowledge, and the vendor cannot escape responsibility by showing that the purchaser might have ascertained upon inquiry that the representations were untrue. ’ ”
 
 (Benner
 
 v.
 
 Hooper,
 
 112 Cal.App. 53, 58 [296 P. 660], quoting other cases.) “[A] false statement
 

 
 *68
 
 of opinion fraudulently made may form the basis of an action, as where the party making it possesses superior knowledge or special information regarding the subject-matter of the representation.”
 
 (Union F. M.
 
 v.
 
 Southern Calif. F. M.,
 
 10 Cal.2d 671, 676 [76 P.2d 503].) Reliance on representations is not precluded by an independent investigation where the person making the representations has a superior knowledge or the party relying thereon is not competent to judge the facts without expert assistance.
 
 (Bagdasarian
 
 v.
 
 Gragnon,
 
 31 Cal.2d 744, 748 [192 P.2d 935].) A representation need not be a
 
 direct falsehood
 
 to constitute fraud. It may be a deceptive answer or other indirect but misleading language.
 
 {Benner
 
 v.
 
 Hooper, supra,
 
 112 Cal.App. 53.) “ Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure. ...”
 
 {Sullivan
 
 v.
 
 Helbing,
 
 66 Cal.App. 478, 483 [226 P. 803].) A professional agent is required to have special knowledge with respect to the agency assumed. (2 Cal.Jur.2d, § 114, p. 790.)
 

 Under these principles of law, it is our opinion that the plaintiffs have made out an actionable case of fraud. The inquiries of Mrs. Brady to defendant Carman showed that, although the plaintiffs were aware that there was an easement across the property, they did not understand its significance. The defendant Carman is a real estate agent, and as such is supposed to possess ordinary professional knowledge concerning the title and natural characteristics of the property he is selling. From the questions addressed to the defendant at the time of the signing of the purchase order and later when the title search was delivered, it should have been apparent that the plaintiffs were ignorant concerning the nature of an easement and how it could limit their use of the property. The defendant’s answers were evasive, and misleading, and were such as to discourage further investigation by the purchasers. It was not sufficient for the defendant to simply tell, the plaintiffs that they “had nothing ... to worry about” and “ [i]t is these water pipes that you find on the curb of the street.” “That is all it is.” The inquiry having been made, and the defendant having undertaken to answer, he was obliged as a professional man to obtain information about the easement and make a full disclosure of the burdens it imposed on the
 
 *69
 
 land. According to the testimony of the witness Scranton, these burdens were considerable. The plaintiffs testified that they relied on the responses to their inquiries, and would not have purchased the lot had they known of the terms of the easement.
 

 The defendants cite
 
 Leonard
 
 v.
 
 Watsonville Community Hospital,
 
 47 Cal.2d 509 [305 P.2d 36], a malpractice ease. Here a defendant doctor was granted a nonsuit against the inference established by the doctrine of res ipsa loquitur, where there was “clear, positive, uncontradicted” evidence adduced from other defendants in cross-examination under Code of Civil Procedure, section 2055, that defendant doctor had not worked on the part of the body involved and was not present in the operating room when the alleged negligence occurred. Relying on this case, the defendants contend that even if the testimony of the plaintiffs standing alone may raise an inference of fraud the fact, as shown by their own testimony, that they knew the easement existed was a sufficiently strong contradiction of the inference to justify the court in granting the nonsuit. In further support of this proposition the defendants cite
 
 Carpenter
 
 v.
 
 Hamilton,
 
 18 Cal.App.2d 69 [62 P.2d 1397],
 
 Elko Mfg. Co.
 
 v.
 
 Brinkmeyer,
 
 216 Cal. 658 [15 P.2d 751]. In the Carpenter case it was held in reversing the trial court’s denial of defendant’s motion for a judgment notwithstanding the verdict, that where misrepresentations are made concerning the obvious physical features of a home, the person ca3inot complain of fraud if he purchases after having actually inspected the premises. In the Elko case, it was held in reversing the trial court that fraud in the procurement of an earlier contract does not justify the cancellation of a substitute contract on the same subject concerning the terms of which all parties were f3illy informed.
 

 The answer to defendants’ contention and their reliance on these cases is that the fraud claimed by the plaintiffs does not consist of a failure of the defendant Carman to disclose the existence of the easement which was admittedly known by all parties, but rather having undertaken to answer plaintiffs’ questio3is, a failure to candidly and completely explain its significance and how it affected plaintiffs’ use of the property. As stated previously, the defendant was a professional agent, and in view of the nature of plaintiffs’ inquiry, he should have enlightened them as to the effect of the easement on their land. His answers were evasive and would appear calculated to stifle further investigation by the plaintiffs. The plaintiffs
 
 *70
 
 testified that the statements were relied upon to their detriment and it is our opinion that on the question of fraud they have established a sufficient case to overcome a motion for a nonsuit.
 

 We now must determine, again having in mind the rule applicable to nonsuits, whether the plaintiffs established a sufficient case on the question of damages, for “ ‘. . . no matter what the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action. ’ ”
 
 (Hill
 
 v.
 
 Wrather,
 
 158 Cal.App.2d 818, 825 [323 P.2d 567].)
 

 The witness Scranton testified that in his opinion plaintiffs’ lot is worth $10,000 less with the easement than it would have been without. Defendants therefore contend that plaintiffs have not proved a case of “out of pocket loss” which is the measure of damages in fraud cases in California, but rather rely on the “benefit of the bargain” measure of damages which is the criterion in other jurisdictions. (Civ. Code, § 3343;
 
 Bagdasarian
 
 v.
 
 Gragnon, supra,
 
 31 Cal.2d 744; Prosser on Torts (2d ed.) p. 568.)
 

 We do not agree with defendants’ contention. The witness Scranton testified on direct examination, “It is my opinion that the value of the lot at that time [February 17, 1957] was about $5,000.” On cross-examination he was asked, “If that lot was worth $5,000 in February, 1957, were you considering value
 
 to a particular person,
 
 or were you considering value in the market?” [Emphasis added.] A. “I was considering -value, the value in terms of money that a willing buyer would be justified in paying if he knew all the facts about the lot and neither the buyer nor seller were acting under compulsion. Each with full knowledge of the things relating to the property. I believe that would be market value.” The “out of pocket loss” would be properly determined in this case by ascertaining the difference between what the plaintiffs paid for the lot because of the fraudulent representation and its fair market value at the time they purchased it. Thus on the strength of Scranton’s opinion of market value, the plaintiffs having paid $15,500 are seeking $10,000 “out of pocket” damages, and are within the California rule. Any inconsistencies in his testimony relating to the basis of this appraisal would go only to his credibility as a witness, and would not justify a nonsuit on the question of damages.
 

 On cross-examination, Scranton admitted that in making his appraisal he had ignored a number of sales of lots in the same subdivision at about the same time as plaintiffs’
 
 *71
 
 sale and which were burdened by the same easement. The witness admitted that these lots sold for approximately the same price as plaintiffs’ lot. The defendants argue that Scranton’s failure to consider these comparables definitely shows that his opinion of market value has no basis in fact.
 

 Viewing Scranton’s testimony most favorably for the plaintiffs, he testified that in preparing his appraisal he inspected plaintiffs’ lot and other lots in the neighborhood. He investigated the construction costs involved in building the dwelling on plaintiffs’ lot and, based on his appraisal of similar properties, calculated costs that he considered appropriate. He considered the effect of the 30-foot water pipe easement and also a utilities easement which crossed one corner of the lot. He considered some sales in the same subdivision where the lots were not burdened by the easement. He considered a number of comparables in the same community of Hillsborough but not in the immediate vicinity. He testified that he did not know what knowledge of the 30-foot easement buyers in the subdivision possessed, but that in his opinion sales of other lots bought subject to its burden were no more significant of value than was the Brady sale.
 

 It is true that comparable sales may be shown either in direct or cross-examination both for the purpose of establishing market value of property and to reflect on the credibility of an expert witness.
 
 (County of Los Angeles
 
 v.
 
 Faus,
 
 48 Cal.2d 672 [312 P.2d 680].) However, a witness need not base his opinion entirely on comparable sales. “ ‘Any existing facts which enter into the value of the land in the public and general estimation, and tending to influence the minds of sellers and buyers, may be considered. ’
 
 (Russell
 
 v.
 
 St. Paul eta. R. B. Co.,
 
 33 Minn. 213.) ”
 
 (Spring Valley Water Works
 
 v.
 
 Drinkhouse,
 
 92 Cal. 528, 533 [28 P. 681].) The fact that Scranton did not consider sales of lots burdened by the easement and which were clearly comparable as to location, time and physical characteristics may strongly reflect on the weight or credibility of his testimony. However, in view of Scranton’s entire testimony as to the basis of his opinion, and giving the plaintiffs the benefit of all reasonable inferences and resolved conflicts, we do not believe that the court is justified in completely disregarding his expert opinion on market value in the determination of a motion for nonsuit.
 

 The judgment is reversed.
 

 Bray, P. J., and Tobriner, J., concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.