[Civ. No. 26222. Second Dist., Div. Two. Nov. 29, 1962.]

SUSAN ADAMS WEIR, Plaintiff and Appellant, v. HUGH JOHN SNOW, as Coexecutor, etc., et al., Defendants and Respondents.

Hal Hughes for Plaintiff and Appellant.

Chauncey E. Snow for Defendants and Respondents.

FOX, P. J.—This is an appeal by plaintiff from a summary judgment entered in favor of defendants.

The defendants are Hugh John Snow and Ann Marie Mercer, coexecutors of the Estate of Jessie Elder Hill, and Charles

Walter Hall, trustee of the Estate of Ellen M. Hill. Plaintiff is the grandchild of Ellen and a beneficiary of a trust created by Ellen's will.[1]

Ellen died on November 16, 1939; her surviving husband, Dr. John G. Hill, acted as the executor of her estate. John subsequently married Jessie Elder Hill.

On August 27, 1941, the residue of Ellen's estate was distributed to John as testamentary trustee. The decree of distribution shows that John was the life beneficiary, together with certain specified charities, of the income of the trust. The decree of distribution further shows that the successor life beneficiaries and the remaindermen under the trust were Gladys Hill Adams (daughter of Ellen and John) and her issue together with certain specified charities. One of the assets distributed to John as trustee was lot 84 of tract 8060, hereinafter referred to as parcel A. The trust accountings in the estate of Ellen Hill show that parcel A was appraised at the death of Ellen at $18,000 and was carried on the trust records at that value. Those accountings also show that John continued to act as trustee of the testamentary trust until his death on November 19, 1954.

In 1945, John listed parcel A for sale. He subsequently offered to sell parcel A to M. Lucas Lehman and Edith Lehman at a price of $31,000 through an exchange of five parcels of real property designated as parcels B-1 through B-5. The equity in parcels B-1 through B-5 was computed at approximately $11,000. The Lehmans were to pay in addition approximately $20,000 in cash to arrive at the total price of $31,000. This arrangement was agreeable with the exception of the payment of certain expenses and commissions which are not here relevant.

It appears that under the terms of the trust, John, as trustee, was not authorized to enter into any exchange agreement since the trust provided that the entire sale price of parcel A was to be applied against the trust deed note on certain Long Beach property. The balance due on the trust deed note at the time of the sale of parcel A was in excess of the $31,000 sale price.

In order to work out this problem, John arranged to dispose of parcel A by a transaction whereby Jessie, who at that time was John's wife, would purchase parcels B-1 through B-5

---

[1]This trust has been involved in other litigations, e.g. *Estate of Hill,* 54 Cal.2d 39 [4 Cal.Rptr. 1, 351 P.2d 33], and *Estate of Hill,* 149 Cal. App.2d 779 [309 P.2d 39].

from the Lehmans. The transaction is summarized as follows: the Lehmans deposited in escrow (1) a grant deed transferring parcels B-1 through B-5 to Jessie, and (2) the sum of $22,000 in cash; Jessie deposited in escrow the sum of $11,540 in cash;[2] and John, as trustee, deposited in escrow a deed transferring parcel A to the Lehmans. The end result achieved by this transaction was: John received, after expenses and commissions, approximately $31,000;[3] Jessie got parcels B-1 through B-5; and the Lehmans received title to parcel A.

The Fifth Account Current and Report of John, filed on January 21, 1946, reported the sale of parcel A to the Lehmans. A notice of hearing of a petition for settlement of the Fifth Account Current was filed on January 28, 1946. The affidavit of service of the notice filed at the same time showed service upon Gladys Hill Adams, Oakhill, Central Avenue, Rye, New York. (Gladys was the mother of plaintiff herein.)

On February 11, 1946, an order settling the Fifth Account therein was issued by the Superior Court, thereby approving the sale of parcel A to the Lehmans for the sum of $31,000.

Gladys Hill Adams, plaintiff's mother, applied for an order of the court to perpetuate the testimony of John, Jessie and M. Louis Lehman, and on July 22, 1946, a petition for removal of testamentary trustee was filed in the estate of Ellen in behalf of Gladys Hill Adams, plaintiff's mother. As a ground for removal, the details of the transaction whereby parcel A was sold by the trustee to the Lehmans was set forth. These allegations made by Gladys in the 1947 petition were substantially identical with the allegations made in the complaint of the case at bar. An affidavit of mailing notice of the petition for removal of the testamentary trustee was filed on July 25, 1947, and showed that the notice of the hearing was sent to Clarellen Adams, 95 Central Avenue, Rye, New York.[4] The affidavit also showed that a notice of the hearing was served on Harold Adams, plaintiff's father, at the same address. On January 8, 1948, a stipulation was filed whereby Gladys Hill

[2]In addition to a cash payment of $11,540, Jessie assumed trust deed obligations on said parcels in the amount of $34,387.81.

[3]The Fifth Account Current of John, as trustee, reported the sale of Parcel A to the Lehmans for the sum of $31,000 cash, of which $21,000 was applied on the trust deed note against the Long Beach property. The additional $10,000 was held for a subsequent payment on the trust deed note.

[4]Plaintiff admits that in 1947 she was known as Clarellen Adams and admits receiving the notices but contends that at the time she was a minor child, 15 years old, and had no understanding of the transactions or the meaning of the notices.

Adams voluntarily dismissed the petition for the removal of the testamentary trustee.

During the period from the dismissal of the petition in 1948 to the filing of the creditor's claim in 1959, the following relevant events occurred: (1) plaintiff reached her majority on May 23, 1953; (2) the trustee, John, died on November 19, 1954; (3) C. Walter Hall was appointed successor trustee under Ellen's will on November 24, 1954; and (4) Jessie Hill died on August 6, 1958.

Plaintiff filed a creditor's claim on July 20, 1959, in the Estate of Jessie Hill which contained substantially the same allegations as those contained in the petition to remove trustee filed in 1947, except that the claim is made against Jessie's estate rather than John. Plaintiff was served a notice of rejection of creditor's claim on July 28, 1959. The present action was commenced on October 23, 1959, after the rejection of the creditor's claim.

Upon the presentment of the above facts in the form of a declaration executed by defendant Snow, the trial court granted defendants' motion for summary judgment.

█ ''The purpose to be served by the summary judgment procedure is to expedite litigation by avoiding needless trials. █ While it is not a substitute for a regular trial and does not authorize the trial of any bona fide issues of fact which the affidavits may reveal, it permits the court to pierce the allegations of the pleadings to ascertain whether a genuine cause of action in fact exists or whether the defense interposed is sham or feigned. (*Cone* v. *Union Oil Co.*, 129 Cal. App.2d 558, 562 [277 P.2d 464]; *Kelly* v. *Liddicoat*, 35 Cal. App.2d 559, 561 [96 P.2d 186].)'' (*Barry* v. *Rodgers*, 141 Cal.App.2d 340, 342 [296 P.2d 898].)

█ In order to decide whether summary judgment was proper in the instant case, we must determine two issues: first, does the declaration[5] in support of the moving parties, i.e., the defendants, state facts sufficient to sustain a judgment in their favor; and second, does the declaration of plaintiff in opposition to the motion show such facts as may be deemed sufficient to present a triable issue of fact. (Code Civ. Proc., § 437c; *Desny* v. *Wilder*, 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Aero Properties, Inc.* v. *Gottlieb*, 206 Cal.App.2d 711 [24 Cal.Rptr. 277].)

---

[5]The declaration is equivalent to an affidavit under Code of Civil Procedure section 2015.5.

The declaration on behalf of the moving parties—the defendants, construed strictly as we are required to do under the law (*Kimber* v. *Jones*, 122 Cal.App.2d 914, 919 [265 P.2d 922]; *Chilson* v. *P. G. Industries*, 174 Cal.App.2d 613, 615 [344 P.2d 868]), states sufficient facts to support a judgment in favor of defendants. On the other hand, the declaration filed in opposition to the motion, liberally construed, does not state facts showing the presence of any material issue of fact. The declaration filed on behalf of plaintiff is inadequate in many respects. Code of Civil Procedure section 437c provides, *inter alia*, "The affidavit . . . in opposition to said motion shall be made by the plaintiff . . . or by any other person having *knowledge* of the facts, and together shall set forth facts showing . . . that a good cause of action exists upon the merits. The facts stated in each affidavit shall be within the *personal knowledge* of the affiant, shall set forth with *particularity*, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, *can testify competently* thereto. . . ." (Emphasis added.) The declaration filed on behalf of plaintiff was not made by plaintiff but by her attorney. There was no showing in the declaration that the attorney had any first hand knowledge of any of the facts in the case. The declaration does not show that the declarant could testify to any of the facts presented in the declaration. On the contrary, a large portion of the statements therein are made solely on information and belief or the lack thereof.[6] "Such belief, without more, is not competent testimony but a mere opinion or conclusion." (*Maltby* v. *Shook*, 131 Cal. App.2d 349, 353 [280 P.2d 541].) Further, the declaration filed on behalf of plaintiff does not set forth facts with particularity; it contains nothing more than the general allegations of a pleading. "Volume 2, Witkin California Procedure, section 78, page 1715: 'Since the object of the proceeding is to discover *proof*, the adverse party must file an affidavit in opposition to the motion; he cannot rely on a verified pleading alone. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257 [223 P.2d 244], *supra*, § 76; *Kelly* v. *Liddicoat* (1939) 35 Cal.App.2d 559 [96 P.2d 186]. . . .) And an affidavit which contains no evidentiary statements but merely

---

[6]E.g., paragraph II of the declaration filed on behalf of plaintiff: "As to paragraph VIII of defendant's affidavit, your affiant has no information or belief upon which to base a denial and therefore denies all and sundry the allegations of such paragraph for lack of information or belief, and further alleges that he is informed and believes and therefore alleges that $33,500.00 was an inadequate price for the property referred to in such paragraph."

repeats the general allegations of the pleading is similarly useless. [Citation.]' " (*Schessler* v. *Keck,* 138 Cal.App.2d 663, 668-669 [292 P.2d 314].)

Although not set out cogently in either the pleadings, the declarations or the briefs, plaintiff's theory of recovery is apparently based on a claim of fraud. Plaintiff contends that $31,000 was an inadequate price for parcel A; that John as trustee concealed from plaintiff the details of the exchange transaction with the Lehmans; and that by virtue of the transaction, allegedly unauthorized, and the concealment, Jessie (John's wife) was able to purchase parcels B-1 through B-5 at a price substantially less than their true value.

Facts which show the presence of at least two affirmative defenses are set forth in defendant Snow's declaration. The declaration filed on behalf of plaintiff does not set forth facts which negate these defenses—thus there is no triable issue of fact presented.

"If it appears from an examination of the affidavits that no triable issue of fact exists, and that the affidavits in support of the motion state facts which, if proved, would support a judgment in favor of the moving party, then summary judgment is proper. (*Coyne* v. *Krempels,* 36 Cal.2d 257, 261 [223 P.2d 244].) It is thus apparent that the propriety of granting or denying the motion depends upon the sufficiency of the affidavits that have been filed. [Citations.]" (*Barry* v. *Rodgers,* 141 Cal.App.2d 340, 342 [296 P.2d 878].)

Snow's affidavit shows that the sale transaction in question was reported to the probate court in 1946 as a part of the Fifth Account of the trustee. This Fifth Account was approved by the court in the 1946 order. It is a general rule that "[o]nce a decree of the probate court settling an account of a trustee becomes final, it is conclusive, in the absence of extrinsic fraud, on all parties interested in the estate. (Prob. Code, § 1123; [Citations.])" (*Estate of Charters,* 46 Cal.2d 227, 234 [293 P.2d 778].) The declaration of plaintiff's attorney does not show any facts whatsoever that would indicate the presence of extrinsic fraud. Even assuming that John did fraudulently conceal the details of the transactions, this still would not constitute extrinsic fraud. " 'Extrinsic fraud,' " says the court in *McLaughlin* v. *Security First Nat. Bank,* 20 Cal.App.2d 602, 605 [67 P.2d 726], "is best defined both negatively and affirmatively. Negatively, it may be said not to be fraud which goes

to the merits of the judgment. Affirmatively, it is fraud which has prevented the cause from having been fully considered on its merits. As an illustration, when a party is prevented by fraud from being present at a hearing or, if present, from presenting his case fully, the situation is one where fraud has prevented a cause from having been fully considered on its merits.'' ▮ The declaration of plaintiff's attorney admits that plaintiff received actual notice of all relevant hearings. There has been no suggestion that plaintiff was prevented from asserting any rights that she may have had. Under such circumstances, it is apparent that plaintiff's declaration raises no material issue of fact.

▮ Furthermore, defendant's declaration sets forth with detailed chronology all the events leading up to this suit. This detailed factual presentment demonstrates that all statutes of limitations which are possibly applicable have expired, thereby manifesting a bar to the instant action. It must be remembered that a period of 14 years had elapsed since the alleged fraud to the filing of the present action. This filing was made more than 6 years after plaintiff had reached her majority in 1953. Plaintiff attempts to overcome the defense of the statute of limitations by arguing that she had no knowledge of the fraud and she lacked comprehension of those parts of the transaction of which she did have knowledge. These conclusions on her part are not sufficient to overcome the bar of the statute of limitations.

▮ '' [T]he courts have read into the statute [Code Civ. Proc., § 338, subd. 4] a duty to exercise diligence to discover the facts. ▮ The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake. Under this rule constructive or presumed notice or knowledge are equivalent to knowledge.

▮ So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run. Many cases, both old and new, *strictly apply these requirements to bar actions brought after lapse of the 3-year period.* [Citations.]'' (1 Witkin, California Procedure, Actions, § 143, pp. 652-653.)

The declaration filed on behalf of plaintiff did not show

facts sufficient to excuse a belated discovery of an alleged fraud. There were no facts stated showing the reason why discovery was not made sooner or the events which led up to the actual discovery.

 In *Teitelbaum* v. *Borders,* 206 Cal.App.2d 634, 639 [23 Cal.Rptr. 868], this court, quoting from *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 430 [106 P.2d 423], stated: "Under ordinary circumstances, a plaintiff may not invoke the aid of a court of equity for relief against fraud after the expiration of the period of limitation for such an action unless he affirmatively pleads that he did not discover the facts constituting the fraud until within three years prior to the date he filed his complaint. (§ 338, Code Civ. Proc.) The word discovery as used in the statute is not synonymous with knowledge. And the court must determine, as a matter of law, when, under the facts pleaded, there was a discovery by the plaintiff, in the legal sense of that term. Consequently, *an averment of lack of knowledge within the statutory period is not sufficient*; a plaintiff must also show that he had no means of knowledge or notice which followed by inquiry would have shown the circumstances upon which the cause of action is founded. Moreover, he must also show when and how the facts concerning the fraud became known to him. [Citations.]" (Emphasis added.)

In *Woodring* v. *Basso,* 195 Cal.App.2d 459 [15 Cal.Rptr. 805], an action to set aside a decree of distribution and to impose a trust upon the proceeds for fraud and mistake was brought after the expiration of the statute of limitations. In sustaining a demurrer without leave to amend, the court pointed out (pp. 466-467) : "As was said in *Davis* v. *Hibernia Sav. etc. Soc.,* 21 Cal.App. 444, 448 [132 P. 462] :

" 'One important observation is that the right of plaintiff to invoke the aid of equity for fraud after three years have expired is an exception to the general statute on the subject and plaintiff must bring himself clearly within the terms of the exception if he desires to claim the benefit of it.

" 'Again, *discovery* and *knowledge* are not convertible terms and whether there has been a *discovery* within the contemplation of the statute is a question of law to be determined by the court from the facts pleaded. It is not, therefore, sufficient for the plaintiff to aver that he was ignorant of the facts at the time of their occurrence and was not informed of them until within the three years. He must show that the

acts of fraud were committed under circumstances that he would not be presumed to have knowledge of them, it being the rule that if he has "notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts." ' "

A mere allegation of concealment, therefore, is not sufficient to state a cause of action in a complaint where the time limit of the applicable statute of limitations has expired. (*Jackson* v. *Master Holding Corp.*, 16 Cal.2d 824 [108 P.2d 673]; *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809]; *Mock* v. *Santa Monica Hospital*, 187 Cal.App.2d 57 [9 Cal.Rptr. 555]); *a fortiori*, such allegation is not sufficient in a declaration in opposition to the motion for summary judgment to overcome the defense of the statute of limitations. The declaration must set forth *facts* with particularity. (Code Civ. Proc., § 437c.)

Such a conclusion is not only inadequate in the case at bench, but is *contra* to the undisputed facts. Certain events recited in defendant's affidavit, and admitted by plaintiff's attorney, manifest a knowledge in plaintiff of all the facts which are the subject of this litigation. (See *Johnston* v. *Johnson*, 127 Cal.App.2d 464, 471 [274 P.2d 1].) In 1947, plaintiff's mother brought an action with respect to the very transaction with which we are now concerned showing full knowledge at that time—12 years prior to the filing of the complaint—of all the facts. Plaintiff at the time was 15 years of age and was living with her mother and father and had continued to live with her mother until the filing of the instant action. Plaintiff came into her majority in 1953, more than six years before the filing of the complaint. Finally, as pointed out *supra*, plaintiff had actual notice of all relevant hearings including the action brought by her mother which involved the same transaction and alleged concealment as is here *sub judice*.

It is apparent from plaintiff's brief that she is under the misapprehension that in a summary judgment proceeding she may rely on allegations in her complaint to cure the deficiencies of the declaration filed by her attorney. The fallacy of this position is demonstrated in *Coyne* v. *Krempels, supra*, 36 Cal.2d 257, 262-263; *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558, 562-563 [277 P.2d 464]; and *Aero Properties, Inc.* v. *Gottlieb, supra*, 206 Cal.App.2d 711, 715.

In conclusion, the declaration filed on behalf of plaintiff does not state facts showing that plaintiff is entitled to any relief; an examination of the declarations shows that no triable issue of fact exists; and the declaration in support of the motion does state facts which, if proved, would support a judgment in favor of the moving party—the defendants. The trial court therefore did not commit error in granting defendants' motion for summary judgment.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.