[Civ. No. 17515. First Dist., Div. Two. Aug. 1, 1957.]

JOHN PIAZZINI et al., Respondents, v. CHESTER V. JESSUP et al., Appellants.

Jack C. Small for Appellants.

William A. Sullivan for Respondents.

BRAZIL, J. pro tem.*—The plaintiffs, as buyers of a house from the defendants, began this action by a complaint which asked for rescission, damages and an injunction against the sellers to prevent them from selling the house because of default. Judgment was entered for plaintiffs for damages; and an injunction was granted as prayed for; from which judgment the defendant sellers have appealed.

 Mr. and Mrs. Jessup, as owners of a house in Redwood City, listed it in June 1953, with a multiple real estate listing service for sale, the size of the lot being then described as 55 by 100 feet. A real estate agent, Mr. Murphy, took Mr. and Mrs. Piazzini to look at the premises as prospective purchasers. Mr. Jessup was not at home, but his wife was. In answer to an inquiry of Mr. Murphy, in the presence of the buyers, if the dimensions of the lot as listed were correct, she said she thought it might be more than 100 feet in depth, maybe 110. Whereupon the agent told them he would call the length of the lot 110 feet more or less. No one bothered to measure the distance, although it could have been stepped off without much effort. There were no obstructions preventing the buyers from seeing the size of the lot. The buyers informed the sellers they were interested in having a large enough back yard to take care of Mr. Piazzini's flowers and

---

*Assigned by Chairman of Judicial Council.

with enough space to serve as a play area for their young son. On August 3, 1953, the parties signed a deposit receipt for $12,000, part to be paid down, part included in a note secured by second deed of trust and the balance being represented by existing liens against the property which were to be assumed by buyers. The downpayment was made, the note was signed on August 13 and the Piazzinis moved in. After doing so, they received a final report from the title company from which they learned for the first time that the lot was only 86 feet long. They soon found out that there were beetle or termite holes in the floors. They promptly notified Mr. Murphy of the discrepancy in lot area and of the existence of termites, and he told the Jessups about it, requesting them to contact the buyers directly. This they did not do, contenting themselves with a written reply to the salesman denying any intended misrepresentation, but admitting having theretofore known of termites in old lumber left under the house. At no time before the sale had the buyers been told by anyone that there was any history of termite infestation in the house. Further proof that the sellers were acquainted with the situation was the admission by Mr. Jessup that he had personally applied pest exterminator to the place and the further fact that the buyers afterwards found some creosote left under the house as if for further use. The presence of termites according to plaintiffs' witnesses was not ascertainable when they called at the house, because the house was dark and the floor was in large part covered by rugs and furniture.

Judgment was entered for plaintiffs for $300 as the cost to them of repairing damages done by termites and $500 for the difference in value between the size of the lot as represented and the one they got. Appellant does not complain of the amounts, but does assert that the finding of fraud in these matters is unsupported.

"Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: . . . (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. (3) The suppression of that which is true, by one having knowledge or belief of the fact. . . . (5) Any other act fitted to deceive." (Civ. Code, § 1572.)

A misrepresentation of the area of real property is a misrepresentation of a material fact, and if relied upon will warrant rescission or damages. The fact that plaintiffs visited the property does not necessarily determine that they depended upon their own observation in determining the area of the lot. (*Younis* v. *Hart*, 59 Cal.App.2d 99, 104 [138 P.2d 323].) The plaintiff buyer "has the right to rely on a vendor's representation as to the quantity of land he is offering for sale, and that the vendee is not under a duty to make an independent investigation. . . . the owner of land is presumed to know the area and boundaries of his own land." (*Mills* v. *Hellinger*, 100 Cal.App.2d 482, 486, 487 [224 P.2d 34].)

Viewing the evidence in the light most favorable to respondent, as we are required to do, (*Estate of Isenberg*, 63 Cal.App.2d 214, 216 [146 P.2d 424]) we find that there is substantial evidence in the record to support the findings relating to fraud (as defined by Civ. Code, § 1572) and consequent damage to the buyers in matters relating to area of the lot, and the presence of termites known to plaintiffs but not disclosed to buyers when the sale was made.

The evidence showed that the buyers had put in several thousand dollars in improvements. Consequently, absolute rescission restoring the parties to their original position was not asked for, nor actually considered by the court or the parties to the action during the course of the trial.

The promissory note, the provisions of which were interpreted by the court with the aid of extrinsic evidence, so far as its provisions are of importance here is as follows:

"In installments as herein stated, for value received, I promise to pay to Chester V. Jessup and Ruth A. Jessup . . . $3430.90 with interest from August 15, 1953 on unpaid principal at the rate of 6% per annum; principal and interest payable in installments of $27.50 or more on the 15th day of each and every month . . . and continuing until such time as the property designated as 875-43rd Avenue, San Francisco is sold, and upon sale of said property the sum of $2000.00 or $2500.00 is to be applied to the principal balance of this note at which time the payments as called for herein are to be adjusted to 1% of the then remaining balance unpaid . . ." Then follows the usual provision for attorney's fees and an option to the holder to declare entire balance due if there be default in payment.

The San Francisco house was sold in March 1954 for a downpayment of $2,000, which left respondents with but $800 after paying bills incident to that sale. The Jessups were not notified of the sale, and the buyers thereafter kept up their $27.50 monthly payments. The trial court, over objection, permitted evidence in explanation of the terms of the note, and as a consequence made a finding that the buyers were not in default, that the provision in the note requiring a balloon payment of $2,000 or $2,500 had been excused and discharged, that the payment so provided for was effective upon the express condition that when plaintiffs sold their house in San Francisco and if they obtained a net sum to themselves equal to the amount of the balloon payment, their payment would become due. The court held that as the condition was not met, the large payment was not due and respondents were entitled to an injunction preventing appellants from proceeding with their remedies for collection of a note, secured by deed of trust, which was in default.

A reading of the transcript fails to disclose any evidence to support these findings for no testimony appears anywhere in the record that appellants were told either orally or in writing that the $2,000-$2,500 balloon payment was conditioned upon any profit. Be that as it may, the trial court was in error in admitting any oral evidence in explanation of the plain provisions of the promissory note. This was not an action to reform a written instrument but merely an action involving the interpretation of a promissory note with an unambiguous provision for a conditional payment. The condition occurred in March 1954, and so the note thereupon became due by its own terms. In construing a contract the intention of the parties must "be ascertained from the writing alone, if possible." (Civ. Code, § 1639.) ■ "When the language of a contract is plain and unambiguous it is not the province of a court to make a new one, or to rewrite or alter by construction what has been agreed upon." (*Barker* v. *Sherman,* 123 Cal.App.2d 810, 812 [267 P.2d 863].)

■■ "The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law . . . Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior

and contemporaneous negotiations, oral or written, are excluded." (*Estate of Gaines,* 15 Cal.2d 255, 264 [100 P.2d 1055].)

The findings of fact and conclusions of law and resultant judgment make no reference whatever to the allegations of the cross-complaint except as to defensive matters affirmatively pleaded. It is doubtful if any cause of action is stated in the first alleged cause of action, for cross-complainant therein sues only for attorney's fees on the note. "Obviously, the agreement to pay interest and attorney's fees included in the note is a part thereof. It is not an independent agreement." (*Garland* v. *Smith,* 131 Cal.App. 517, 523 [21 P.2d 688].) No evidence was presented in behalf of the second cause of action alleging damages resulting from a civil conspiracy, and the third cause of action is no cause of action at all but merely defensive matter affirmatively pleaded. The findings, conclusions and judgment are justified by the evidence in all matter relating to damages, but not with respect to the default of buyers and the right to an injunction.

That portion of the judgment labeled (1) and (2) (damages for fraud) is affirmed and that portion labeled (3) (issuance of an injunction to prevent sale) is reversed. The trial court is directed to amend the findings of fact and conclusions of law in accordance with this opinion, discharge the injunction and enter judgment in conformity with the findings and conclusions as so amended.

Dooling, Acting P. J., and Draper, J., concurred.