[No. B101455. Second Dist., Div. Four. July 29, 1998.]

GEORGE FURLA, Plaintiff and Appellant, v.
JON DOUGLAS COMPANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of subparts labeled "Summary Adjudication of Other Causes of Action," "Intentional Misrepresentation, Concealment, Punitive Damages," and "Rescission."

**COUNSEL**

Bridgford, Knottnerus & Gleason, Richard K. Bridgford and John S. Gleason for Plaintiff and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, Rita Gunasekaran, Stephen M. Cainé, Sherwood & Hardgrove, Kenneth M. Hardgrove, Chet Cramin, Russell Iungerich and Donald B. Serafano for Defendants and Respondents.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Plaintiff George Furla (plaintiff) purchased a residence from defendant Leonard Krasinski (Krasinski), whose real estate agent was defendant Marni Shore (Shore), an associate of defendant Jon Douglas Company. Claiming that defendants misrepresented to him the size of the residence as being approximately 5,500 square feet, when in reality it was only approximately 4,300 square feet, plaintiff brought this action for damages for intentional misrepresentation and concealment, negligent misrepresentation and negligence, and for rescission. The trial court granted summary judgment for defendants on the grounds that defendants did not know the house was substantially less than 5,500 square feet, defendants had reasonable grounds to believe the house was 5,500 square feet, defendants breached no duty toward plaintiff in failing to discover the house was not 5,500 square feet, and plaintiff did not justifiably rely on any representations by defendants. We reverse, finding there are triable issues of fact as to some of the causes of action.

### FACTS

In order to complete a narrative essential to understanding of the case, we summarize certain evidence produced by all the parties.[1]

Krasinski listed for sale his home in the Mount Olympus area of Los Angeles. According to an advertising flyer, it was originally listed at $1,850,000. It was listed with defendants at $1,275,000 and later marked down to $995,000.[2] Defendants listed the property in the Multiple Listing Service. The description in the Multiple Listing Service included, "APX: 5500," meaning approximately 5,500 square feet. At the bottom of the listing was stated, "Information Deemed Reliable But Not Guaranteed."

Defendant Shore obtained the information that the house was 5,500 square feet from Krasinski's daughter, Larisa Rappaport. Rappaport told Shore that

[1]Krasinski points out that the trial court sustained an objection to plaintiff's declaration, to the extent it contradicted statements in plaintiff's deposition. We summarize based on plaintiff's deposition.

[2]The flyer lists the following features: "Finest, quality construction, glorious living room, luxurious master suite, three family bedrooms, maids room and bath, den with wet bar, four fireplaces, light and bright, spacious and very chic, banquet size dining room, huge gourmet kitchen, breakfast room, large family room, pool and spa, one and one-half years new, peaceful canyon views." At the bottom it states, "Above information from sources deemed reliable but not guaranteed."

the architectural plans used to construct the property stated the house was 5,500 square feet.[3] Shore relied on this information from Rappaport in submitting it to the Multiple Listing Service. Shore declared that in her several visits to and visual inspections of the property she saw no indication that the house was not 5,500 square feet. She declared that at no time prior to close of escrow did she hear or have reason to believe the house was not 5,500 square feet.

Plaintiff, who has a baccalaureate degree in business administration from the University of Southern California, is self-employed as a stock trader. He decided to diversify by investing in residential real estate. He was looking for bargains or distress sales. He previously bid on two properties in Beverly Hills which were in foreclosure, but his bids were rejected as too low. His theory of investing in real estate was to find bargains on a per square foot basis. His prior two bids on the Beverly Hills properties were based on square footage, after he obtained comparable sales information from a broker.

In the present transaction plaintiff was represented by Karen Martinez, a friend of a friend, who was employed as a real estate agent by Fred Sands Realtors, acting as agent exclusively for the buyer.[4] Martinez brought to plaintiff's attention the subject property in Mount Olympus. When plaintiff visited the property for the first time, he picked up the flyer (which did not mention square footage) and a copy of the Multiple Listing Service listing (which did mention approximately 5,500 square feet). Plaintiff testified at deposition that upon this first visit, Shore or her partner Chris Anderson orally mentioned 5,500 square feet in their description of the house's features.[5] Plaintiff's agent Martinez also obtained for plaintiff a computerized "property profile," apparently through a title insurance company, which gave information on tax assessments and property characteristics, including "SQR/FT: 5500." The property profile included a notation, "The accuracy of the above information is deemed reliable but is not guaranteed."

On June 16, 1993, plaintiff made a written offer to purchase Krasinski's property. The printed "real estate purchase agreement and receipt for deposit" which plaintiff signed contained the following provisions: Paragraph

---

[3]Rappaport and her husband were the owners when the house was constructed. Shore obtained information from Rappaport because Krasinski did not speak fluent English.

[4]Plaintiff, on the advice of his counsel, elected not to sue Martinez or Fred Sands Realtors. They are not parties.

[5]Chris Anderson died before this litigation and was not served as a defendant.

18F stated, "PROPERTY LINES/SIZE. . . . Buyer is . . . aware that Broker[6] makes no representations with respect to the boundary lines, encroachments from or on the Property or the square footage of the subject lot or the improvements thereon. Information, if any, on square footage provided in the Multiple Listing Service, including, without limitation room sizes, and information materials concerning the Property are approximations only. By obtaining a survey of the Property or having a professional appraiser measure the Property, Buyer may verify actual . . . square footage. Such verifications may be obtained as part of paragraph 11 above." Paragraph 11A stated, "PHYSICAL INSPECTION. This Agreement is contingent upon buyer's approval of the physical condition of the Property. BROKER STRONGLY RECOMMENDS THAT BUYER EMPLOY A LICENSED CONTRACTOR, ENVIRONMENTAL INSPECTOR, BUILDING INSPECTOR, STRUCTURAL ENGINEER OR OTHER PROFESSIONAL(S) AT BUYER'S EXPENSE TO INSPECT AND INVESTIGATE THE PROPERTY . . . ." Paragraph 11C stated, "CONTINGENCIES/BUYER'S DUTIES. Seller shall make the Property available to inspection(s) and investigation(s) by Buyer pursuant to this paragraph 11. . . . BUYER IS ADVISED THAT UNDER CIVIL CODE SECTION 2079.5, BUYER HAS AN INDEPENDENT LEGAL DUTY TO USE REASONABLE CARE TO PROTECT BUYER CONCERNING FACTS ABOUT THE PROPERTY WHICH ARE KNOWN TO BUYER, OR WITHIN BUYER'S DILIGENT ATTENTION AND OBSERVATION."[7]

On June 17, 1993, the parties negotiated further and reached agreement on a price of $935,000. Plaintiff accepted Krasinski's written counteroffer, modified to state that price. Neither plaintiff's written offer nor the counteroffer contained any express provisions representing that the property was 5,500 square feet or conditioning the sale upon the square footage. Paragraph 25 of the agreement provided in part, "All prior written or oral agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement which constitutes the entire contract between the parties. The terms of this Agreement are intended by the parties as a final, complete and exclusive expression of their agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous written or oral agreement."

Plaintiff's version of the final negotiations was as follows: The parties present during those negotiations were plaintiff, Krasinski, plaintiff's agent Martinez, and possibly Krasinski's agent Anderson. Plaintiff held a large

---

[6]"Broker" is defined in the introductory paragraph of the agreement as Fred Sands Realtors, plaintiff's agent.

[7]The escrow instructions subsequently signed by the parties contained similar provisions. The escrow instructions recited that Jon Douglas Company is the listing agent acting as agent of the seller exclusively, and that Fred Sands Realtors is the selling agent acting as agent of the buyer exclusively.

calculator in his hand. Plaintiff said aloud, " 'Okay, 5500 square feet, I'll pay $170 a foot.' " Plaintiff entered those numbers into his calculator and held up the resulting figure of $935,000, and said that was his best offer. Krasinski accepted it.

During escrow plaintiff did not take advantage of his right to have the house measured for its square footage. Plaintiff did obtain a professional home inspection and a geologist's report, but the home inspector did not include, nor was he requested to include, square footage measurements in his report to plaintiff.

During escrow plaintiff suffered buyer's remorse and wondered if he had paid too much per square foot. Apparently in response to plaintiff's concerns, Anderson during the escrow period sent plaintiff a fax listing four other properties in Mount Olympus showing their approximate square footage and selling price, breaking these down on a per square foot basis ranging from $235 per square foot to $180 per square foot. Plaintiff thereafter closed escrow and took possession on July 30, 1993.

In February 1995 plaintiff decided to sell the property. He interviewed several realtors for listing it. When John Parks of Prudential California Realty came to the house and plaintiff stated it was 5,500 square feet, Parks immediately responded, " 'There is no way this house is 5500 square feet.' " Parks stepped it off informally and concluded the living area was about 4,130 square feet. In his declaration submitted with plaintiff's opposition to summary judgment, Parks opined that "a knowledgeable realtor would easily recognize that the residence is substantially less than 5,500 square feet."

Plaintiff then obtained measurements by two professional real estate appraisers. Wayne Scott declared that the gross living area was 4,615 square feet, and he opined, "a cursory inspection of the property would reveal that the residence has considerably less then 5,500 square feet of gross living area." Daniel R. Bone measured the gross living area as 4,437 square feet.

Although Shore relied upon information from Rappaport that the architectural plans stated the square footage was 5,500, defendants did not offer into evidence a declaration from Rappaport. Krasinski declared that based on the architectural plans he believed the square footage was 5,334. He lodged with the court a copy of the architectural plans, which stated a square footage of 5,334. Krasinski also provided a copy of a "cost breakdown" from the contractor, which stated, "Size S.F. estimated cost 'A' 5.350." Plaintiff produced from City of Los Angeles records a copy of the October 1989 application for inspection of new building and for certificate of occupancy,

which stated a square footage of 5,334. Plaintiff also produced a December 1989 application for inspection to add-alter-repair-demolish and for certificate of occupancy, which described the proposed alteration as reducing the floor area by 200 square feet.

Records of the Los Angeles County Assessor for 1991-1992 described the square footage as 5,500. The notes of the assessor, apparently as of May 22, 1991, indicate "New res[.] Unable to get plans. Called broker[. A]pprox[.] # of res[.] 5500 . . . ."[8] The assessor's figure was apparently picked up in the "property profiles" provided by title insurance companies. Plaintiff received one of these from his agent Martinez. Similarly, Tom Dotson relied on one of these property profiles when in May 1993 he did a "drive-by" (i.e., without entering and measuring) "Freddie Mac" appraisal for Krasinski and listed the square footage as 5,500. Defendant Shore received a copy of Dotson's appraisal, which tended to corroborate Shore's belief that the house was 5,500 square feet.

During the escrow period plaintiff's mortgage lender, Merrill Lynch Credit Corporation, had the property appraised. The appraisal report, by Philip F. Sarazen of "The Appraisal Office," appraised the value as of July 9, 1993, at $935,000. That report included a diagram and measurements of the upper and lower levels and an estimate that the square footage was 4,311 (2,595 on level 1 plus 1,716 on level 2). But plaintiff was not provided a copy of that report until this litigation. During escrow plaintiff's lender told him that all plaintiff needed to know was that the property appraised for $935,000. Likewise, plaintiff's agent Martinez had no timely knowledge of the information in that appraisal.[9]

## DISCUSSION

### *Standard of Review*

Summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ▮ The function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, not to

---

[8]The "broker" as of May 1991 is unidentified. The record indicates that Jon Douglas Company's listing was signed in September 1992.

[9]Plaintiff intimates that defendants' agent Anderson had knowledge of this information. Plaintiff cites hearsay testimony by Martinez that she had a conversation with Anderson in which Anderson indicated he opened the property for the appraiser. This was properly objected to and stricken as hearsay. In any event it does not show that Anderson had knowledge of the appraiser's estimate of total square footage.

decide the merits of the issues themselves. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Whether the papers raise a triable issue of material fact is reviewed de novo by the appellate court, unbound by the trial court's decision. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].)

*Negligence and Negligent Misrepresentation*

■ With regard to plaintiff's causes of action based on negligence or negligent misrepresentation, the trial court concluded that defendants had reasonable grounds to believe the house was 5,500 square feet, defendants breached no duty toward plaintiff in failing to discover the house was not 5,500 square feet, and plaintiff did not justifiably rely on defendants' representations.

All these issues involve questions of fact which ordinarily would preclude summary judgment. (Civ. Code, § 1574; see *Wilbur* v. *Wilson* (1960) 179 Cal.App.2d 314, 316-317 [3 Cal.Rptr. 770]; 1 Miller & Starr, Cal. Real Estate (2d ed. 1989) Contract Law § 1:117, p. 383 & fn. 65 (hereafter Miller & Starr).) We reject defendants' contention that this is the rare case on which no reasonable minds could differ. (Cf. *Guido* v. *Koopman* (1991) 1 Cal.App.4th 837, 843 [2 Cal.Rptr.2d 437].) We conclude the trial court erroneously resolved disputed issues instead of merely spotting them.

Negligent misrepresentation is a form of "actual fraud," consisting of "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." (Civ. Code, § 1572, subd. 2.)

A real estate broker or salesperson has a statutory duty toward a prospective purchaser of residential real property "to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal . . . ." (Civ. Code, § 2079, subd. (a).) A real estate agent also has a statutory liability for negligence: "[i]f an agent . . . places a listing or other information in the multiple listing service, that agent . . . shall be responsible for the truth of all representations . . . of which that agent . . . had knowledge or reasonably should have had knowledge to anyone injured by their falseness or inaccuracy." (Civ. Code, § 1088.)

Shore declared that she and Jon Douglas Company relied upon a statement by Larisa Rappaport that the architectural plans showed 5,500 square feet;

but Shore and Jon Douglas Company did not produce any declaration by Larisa Rappaport; and the architectural plans submitted in evidence contradicted this claim, showing only 5,334 square feet, not 5,500 square feet. Shore declared that she could not tell from a visual inspection of the property that it was substantially less than 5,500 square feet, but plaintiff contradicted this claim with expert declarations that a reasonably competent real estate agent should reasonably have known from a visual inspection that the house was substantially less than 5,500 square feet. This conflicting evidence raised a triable issue of fact for the jury whether Shore and Jon Douglas Company had a reasonable basis for believing the house to be 5,500 square feet, or breached their statutory duty by failing to observe from a visual inspection that the property was not as represented in the Multiple Listing Service.

Krasinski suggests that *he* never misrepresented the square footage as 5,500, and he declared that he believed the square footage was 5,334 based on the architectural plans. Even assuming that the architectural plans gave Krasinski a reasonable basis to believe the square footage was 5,334, and that as a layperson he would not reasonably have known from a visual inspection that even 5,334 was a substantial exaggeration, there are circumstances under which Krasinski, having obtained the benefit of the sale, could be liable as principal for a misrepresentation by his agent Shore and Jon Douglas Company. (Civ. Code, § 2338 [liability of principal for agent's negligent misrepresentations]; 2 Miller & Starr, *supra*, § 3:31, p. 182 & fn. 9 [same]; cf. *Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349, 353 [164 P.2d 8] [integration clause may protect innocent seller from tort damages for agent's negligent misrepresentations, but will not prevent rescission and will not protect seller from liability for seller's own conduct].) Krasinski may have known that his agent represented the square footage as 5,500 (which is more than 5,334) in the Multiple Listing Service.

Defendants contend there is no triable issue of fact and as a matter of law plaintiff did not reasonably rely upon the misrepresentations, and plaintiff unreasonably failed to exercise due care for his own interest as buyer. They contend plaintiff was repeatedly warned by language in the Multiple Listing Service and the sales agreement that statements concerning square footage were approximations only, and that plaintiff could obtain accurate determinations of square footage by a professional pursuant to the buyer's right to inspect the property. But whether a plaintiff reasonably relied on a defendant's misrepresentations or failed to exercise reasonable diligence is also ordinarily a question of fact for the trier of fact. (1 Miller & Starr, *supra*, § 1:117, p. 383 & fn. 65.) We conclude it is likewise a triable issue of fact here.

Ordinarily a buyer is entitled to rely upon a seller's representations concerning the area of the property being sold, and is not required to hire an expert to discover the falsity of the seller's representations. (*Richard* v. *Baker* (1956) 141 Cal.App.2d 857, 861-862 [297 P.2d 674]; *Piazzini* v. *Jessup* (1957) 153 Cal.App.2d 58, 61 [314 P.2d 196]; 1 Miller & Starr, *supra*, § 1:118, p. 400.) On the other hand, a buyer is not relieved of "the duty to exercise reasonable care to protect himself or herself, including those facts [*sic*] which are known to or within the diligent attention and observation of the buyer" (Civ. Code, § 2079.5); and a buyer is held to be aware of obvious and patent conditions. (*Tarrant* v. *Butler* (1960) 180 Cal.App.2d 235, 240, 241-242 [4 Cal.Rptr. 230] [buyer was not required to hire an expert to determine if the builder "used a 2" × 4" (when he) should have used a 2" × 6"," but was on notice from glaring oddities that the building could not be in compliance with code]; 1 Miller & Starr, *supra*, § 1:118, p. 388.)

Whether the buyer unreasonably failed to protect himself and unjustifiably failed to discover true conditions depends upon all the circumstances. (1 Miller & Starr, *supra*, § 1:118, p. 389.) This presents an issue of fact for the trier of fact. A jury might reasonably conclude that plaintiff was justified in relying on defendant's representation of the square footage, that the truth was not obvious and patent to plaintiff and could be determined only by an expert measurement which plaintiff was not required to hire in order to discover defendants' misrepresentations.

### Defendants' Arguments Based on Contract Language

Defendants point out that the sale agreement contains no explicit term conditioning sale upon the representation the house was 5,500 square feet, and that paragraph 18F provides: "Buyer is . . . aware that Broker makes no representations with respect to . . . square footage of the subject lot or the improvements thereon. Information, if any, on square footage provided in the Multiple Listing Service, including, without limitation room sizes, and information materials concerning the Property are approximations only. By obtaining a survey of the Property or having a professional appraiser measure the Property, Buyer may verify actual . . . square footage." In addition, paragraph 25 provides in part, "All prior written or oral agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement which constitutes the entire contract between the parties. The terms of this Agreement are intended by the parties as a final, complete and exclusive expression of their agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous written or oral agreement." Defendants contend in

various ways that these provisions preclude plaintiff from arguing that defendants made any representation as to square footage which could subject defendants to liability.

Preliminarily, as pointed out by plaintiff at oral argument, the clause in paragraph 18F, "Broker makes no representations," does not literally apply to defendants. "Broker" is defined in the agreement as Fred Sands Realtors, who was plaintiff's agent exclusively for the buyer, and who is not a party to this litigation. Literally paragraph 18F states only that plaintiff's agent makes no representations, and does not state that Krasinski, Shore, or Jon Douglas Company makes no representations. The record does not explain why the agreements contained no similar disclaimer in favor of defendants.

Nevertheless, Shore and Jon Douglas Company say they are not relying upon this language as "an exculpatory clause" excusing them from their own negligence. Rather, they and Krasinski contend this shows that the square footage of the house was not a material term of the contract, and that plaintiff was at least on notice that prior statements of square footage were "approximations only." Shore and Jon Douglas contend that, as a matter of law, they cannot be liable for making an erroneous approximation. They further contend that plaintiff's action amounts to an impermissible attempt "to vary or contradict" the terms of the written sale agreement, in violation of the parol evidence rule and paragraph 25. We are not persuaded.

Parol evidence is inadmissible only if it "contradicts" the integrated written agreement. (Code Civ. Proc., § 1856, subd. (a); *Banco Do Brasil, S.A.* v. *Latian, Inc.* (1991) 234 Cal.App.3d 973, 1001, 1003 [285 Cal.Rptr. 870].) Assuming that paragraph 18F put plaintiff on notice that prior statements of square footage were approximations only, it is still a question of fact for a trier of fact whether plaintiff reasonably relied upon defendants' approximations. Defendants assume that if their prior estimates of square footage are treated as approximations, defendants cannot be liable. They say an "accurate approximation" is an "oxymoron," or in any event an approximation is an "opinion" rather than representation of a "fact." But according to plaintiff's theory of the case, the estimate of 5,500 square feet was not merely inaccurate, it was *grossly* inaccurate, by more than 20 percent. Defendants' own citation of a dictionary definition of "approximate" includes "near to; about; a little more or less; close." The alleged error here was not de minimis, and cannot be ignored. We cannot say that no reasonable jury could conclude that an "approximation" of square footage which is wildly exaggerated amounts to an actionable misrepresentation of fact.

A statement couched as an opinion, by one having special knowledge of the subject, may be treated as an actionable misstatement of fact. (*Doran* v.

*Milland Development Co.* (1958) 159 Cal.App.2d 322, 325 [323 P.2d 792] [statement by owner's salesman that foundation was properly built]; *Brady v. Carman* (1960) 179 Cal.App.2d 63, 68 [3 Cal.Rptr. 612] [real estate agent's opinion concerning significance of an easement on the property].) Whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury. (*Pacesetter Homes, Inc.* v. *Brodkin* (1970) 5 Cal.App.3d 206, 212 [85 Cal.Rptr. 39]; *Davis* v. *Monte* (1927) 81 Cal.App. 164, 170 [253 P. 352]; BAJI No. 12.32 (8th ed. 1994).) Given the rule that an owner of real property is presumed to know the size of the property and that a buyer is ordinarily entitled to rely upon the owner's representation of size without having to hire an expert to discover its falsity (*Piazzini* v. *Jessup, supra*, 153 Cal.App.2d 58, 61), a jury could reasonably find that a grossly erroneous "approximation" of size is an actionable misrepresentation. (See *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 805 [142 Cal.Rptr. 487] [representation by owners/operators that apartment complex was "safe" could be construed not as mere opinion, where given by "one with presumed expert knowledge"].)

*Summary Adjudication of Other Causes of Action\**

. . . . . . . . . . . . . . . . . . .

*Intentional Misrepresentation, Concealment, Punitive Damages\**

. . . . . . . . . . . . . . . . . .

*Rescission\**

. . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed. The trial court is directed to enter orders on summary adjudication consistent with the views expressed herein and to conduct such further proceedings as are necessary. Costs on appeal are awarded to appellant.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied August 21, 1998.

---

\*See footnote, *ante*, page 1069.