Filed 5/22/13  Hsu v. Riverside Cty. Transp. Com. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHING LUNG HSU et al., | |
| Plaintiffs and Appellants, | E054922 |
| v. | (Super.Ct.No. RIC10014447) |
| RIVERSIDE COUNTY TRANSPORTATION COMMISSION et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed.

Barry A. Ross for Plaintiffs and Appellants.

Best Best & Krieger, Mark A. Easter and Kira L. Klatchko for Defendant and Respondent Riverside County Transportation Commission.

Glenn B. Mueller, Ronald W. Beals, and Jeffrey R. Benowitz for Defendant and Respondent State of California.

1

Plaintiffs Ching Lung "Patrick" Hsu and Wen Sung Hsu brought this inverse condemnation action to recover additional severance damages for their property near Perris.

Defendant Riverside County Transportation Commission (RCTC) filed a motion for summary judgment.[1] It alleged that plaintiffs' action was barred by res judicata and collateral estoppel because plaintiffs had already received severance damages for the same property in an earlier eminent domain action.

Although plaintiffs argued that there were many factual issues to be tried, the trial court granted the motion for summary judgment. It found that the drainage and flooding issues were considered in the eminent domain action and that the severance damages awarded in the eminent domain action compensated plaintiffs for all reasonably foreseeable damage to their property caused by the proposed improvements.

Plaintiffs appeal, contending that the trial court erred because the issue of flooding was not raised in the prior action, there are material factual issues, and the flooding was not a reasonably foreseeable result of the proposed project.

Finding at least three material factual issues, we must reverse the trial court's granting of the summary judgment motion.

---

[1] Defendant State of California (the State) subsequently joined in the summary judgment motion and in RCTC's briefing.

# I

## STANDARD OF REVIEW

Plaintiffs cite the standard of review as stated in *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89: "Summary judgment provides 'courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] A summary judgment motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] 'The pleadings determine the issues to be addressed by a summary judgment motion [citation], and the declarations filed in connection with such motion "must be directed to the issues raised by the pleadings."' [Citation.] [¶] The moving party 'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citations.] Defendants moving for summary judgment . . . meet this burden by presenting evidence demonstrating that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to the action. [Citations.] Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists with regard to that cause of action or defense. [Citations.] Material facts are those that relate to the issues in the case as framed by the pleadings. [Citation.] In ruling on the motion, the court must consider the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party opposing the motion. [Citation.] [¶] We review an order granting

summary judgment de novo, considering all the evidence set forth in the moving and opposition papers, except that to which objections have been made and sustained. [Citations.] In undertaking our independent review, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact. [Citations.] 'We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale.' [Citation.]" (*Id.* at pp. 100-101; see also Code Civ. Proc., § 437c, subd. (c);[2] *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); *Hamburg v. Wal-Mart Stores. Inc.* (2004) 116 Cal.App.4th 497, 502-503.)

## II

## THE PLEADINGS

The complaint alleges that plaintiffs own property in Perris, that the property was affected by a project involving Highway 74 in Perris, and that "[p]ursuant to the duly approved plans, defendants and each of them, constructed the Project." Despite this allegation, it is further alleged that "[i]n constructing the Project, the defendants, and each of them, failed to construct the Project in accordance with the approved plans" because

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

4

certain drainage improvements contained in the approved plans were not actually

constructed.  As a result, the property flooded during rainstorms.  Finally, plaintiffs allege

they have not received any compensation as a result of such flooding to their property.

RCTC's answer was a general denial with 13 affirmative defenses.  The

affirmative defenses include res judicata "as Plaintiffs are seeking to recover damages

that Plaintiff [*sic*] could have, and should have sought in the eminent domain

lawsuit . . . ."  A fifth affirmative defense asserts that the action is barred by the doctrine

of estoppel.

The State filed a separate answer.  It consisted of a general denial with 16

affirmative defenses.  Interestingly enough, the State did not assert a res judicata defense,

but it did allege an equitable estoppel defense.[3]

### III

### THE MOTION FOR SUMMARY JUDGMENT

On May 20, 2011, RCTC filed its motion for summary judgment.  The motion

asserted that RCTC was entitled to summary judgment because the plaintiffs "seek

compensation for damages to the same property that was the subject of a prior eminent

domain proceeding in which Plaintiffs sought severance damages."  The motion argued

that defendants had constructed the project in accordance with "the manner in which it

---

[3]     Accordingly, plaintiffs argue that the State's summary judgment motion should have been dismissed.  In view of our disposition, it is unnecessary to consider this argument.

5

was proposed" and that plaintiffs had received a jury award in the prior action which included severance damages resulting from the project.

In an accompanying memorandum of points and authorities, RCTC argued that plaintiffs were estopped "from being able to recover damages for inverse condemnation when the damages were foreseeable at the time of the judgment in condemnation."

RCTC also attacked the *factual* basis for plaintiffs' claim by arguing that it was based on a factual inaccuracy.[4] RCTC argued that plaintiffs claimed that RCTC omitted certain drainage facilities, designated as Drainage Facilities 66 and 67, from the approved 2003 project plans. These facilities were shown on 2006 "as built" plans as being built, but they never were constructed.

RCTC argued that the 2003 project plans did not include those drainage plans and were never intended to include those drainage plans. Further, the designation of those plans as "as built" plans was merely an error, the drainage facilities shown on those plans were never a part of the project, and the drainage facilities were never built. RCTC argued that, since the project was completed in accordance with the original plans, plaintiffs had no justifiable claim for inverse condemnation.

RCTC also argued that they had a complete defense to the action because, after a severance damage award in an eminent domain action, plaintiffs cannot prevail in a second action "for the past, present, or future damages that may have occurred, or

---

**4**    As discussed below, plaintiffs' declarants disagreed, thereby creating a material factual issue which defeats summary judgment.

6

reasonably be expected to occur" by reason of the use of the property for a public purpose.  (Citing *Cox v. State of California* (1970) 3 Cal.App.3d 301, 309, italics omitted.)

Secondly, RCTC argued that severance damages were awarded in the eminent domain action after consideration of various issues, including flooding and drainage issues.  RCTC cited various code sections and *People ex rel. Dept. Pub. Wks. v. Silveira* (1965) 236 Cal.App.2d 604 to support their claim that a compensation award includes all damages, present and prospective, that will arise from the construction of the project improvements as proposed in the project plans.  The corollary to this argument is that the damages previously awarded in the eminent domain action included damages for all reasonably foreseeable consequences of building the project in accordance with the approved plans.  RCTC cited *Ellena v. State of California* (1977) 69 Cal.App.3d 245 [Fourth Dist., Div. Two] in support of this argument.

Numerous factual documents were filed with the motion, including supporting declarations and plan pages showing planned drainage facilities, designated D-25 and D-49.  RCTC also requested the court to take judicial notice of the pleadings and verdict in the prior action.

A.     *Issues Framed by the Pleadings*

The primary issue framed by the pleadings is whether defendants have a complete defense to the action.  To establish a res judicata or collateral estoppel defense, RCTC must show that plaintiffs were previously compensated for severance damages to their

7

property, that the Route 74 road improvements were constructed in accordance with the approved plans, and that the subsequent flood damage was foreseeable at the time of the prior eminent domain award. The cases cited by RCTC support these general propositions.

B.     *Did Defendants Establish Defenses to Plaintiffs' Claim?*

RCTC contends that it has established the res judicata and collateral estoppel defenses to the plaintiffs' complaint for additional severance damages. The contention is well supported by its version of the facts, its declarations, and the applicable law. However, the primary issue in this case is whether plaintiffs have shown that there are triable issues of fact. We therefore turn to that question.

C.     *Did Plaintiffs Demonstrate the Existence of Triable Material Factual Issues?*

The statements of undisputed material facts filed by the parties in connection with the summary judgment motion show the wide disagreement between the parties on the issue of whether triable issues of material fact exist.

Defendants' initial statement of undisputed material facts lists 13 allegedly undisputed facts.

Plaintiffs' statement disputes or objects to nine of those allegedly undisputed facts. In addition, plaintiffs included in their statement a 13-page statement of "additional facts in dispute." The statement primarily references the declaration of Richard Doolittle, which plaintiffs submitted in opposition to the summary judgment motion.

8

RCTC responded by filing a "reply" separate statement of undisputed facts which lists RCTC's alleged fact, plaintiffs' response, and RCTC's objection to each response. In particular, RCTC objected to statements in the declarations of Mr. Doolittle; plaintiff Ching Hsu; and plaintiffs' attorney, Barry Ross. Although a proposed order on the extensive objections was submitted to the trial court, it apparently did not rule on them.

As they did in the trial court, plaintiffs allege that there were at least eight factual issues which they contend were raised by their declarations. We focus on three of those issues.

1. *Were the subject drainage facilities part of the approved plans for the project?*

Plaintiffs argue that there is a triable issue of fact as to whether the drainage facilities were part of the approved project plans. According to Mr. Doolittle's declaration, the approved sheets are D-25 and D-49 dated November 3, 2003. Secondly, there are revised sheets D-25R and D-49R that are also dated November 3, 2003. Thirdly, there are drainage facility sheets D-25 and D-49 that bear an "as built" stamp upon completion of the project in 2006.

Mr. Doolittle explains why there is confusion about which sheets were part of the approved plans, primarily because of ambiguities surrounding the revised plans, including lack of change orders and a general practice of not dating plans and revisions on the same day. Mr. Doolittle states "Exhibits 'C' and 'F' [sheets D-25R and D-49R] show that additional drainage facilities were to be included as part of the Route 74 project

in order to alleviate flooding and excessive rainwater flow on the subject property." He also confirms that sheets D-25 and D-49 are the drainage improvements referred to as systems 66 and 67.

Plaintiffs argue that, if the drainage facilities listed on the original or revised sheets were part of the original project, the failure to complete the project by building those facilities would be grounds for the additional severance damages sought by plaintiffs. In this regard, section 1263.450 provides: "Compensation for injury to the remainder shall be based on the project as proposed." Plaintiffs cite *People v. Adamson* (1953) 118 Cal.App.2d 714: "[I]t is the law of this state that damages not necessarily included in the issues in a condemnation action may be recovered in a subsequent action. [Citations.]" (*Id.* at p. 722.)

Plaintiffs therefore find a factual issue as to whether the drainage facility sheets, particularly the revised sheets D-25R and D-49R, show facilities that were not constructed but were part of the project plans existing at the time of the eminent domain trial.[5] However, the trial court found that "[i]t is undisputed that the 2003 Plans did not contain Drainage Facilities 66 & 67." But, as shown above, the issue was put into dispute by plaintiffs' declarations.

---

[5] The project engineer, Mr. Reyes Chavez, stated in his declaration that the revised sheets were merely conceptual designs made in 2005, that the plan approval date was a computer error, and that the "as built" stamp which was affixed in 2006 was also due to computer error. The eminent domain trial was in 2004.

10

RCTC argues that "Hsu has not established that the Project that was built was different from the Project that was proposed." But plaintiffs have established that there is a difference of opinion in the declarations which creates a material factual issue which cannot be decided on summary judgment.

Plaintiffs also cite the trial court's statement of the general rule: "If the proposed project is not thereafter carried out as proposed, plaintiffs correctly contend that a subsequent action may be maintained for damages to the retained parcel caused by the changes in the project. (See *People ex rel. Dept. of Public Works v. Pera* (1961) 190 Cal.App.2d 497, 502.)"[6] Accordingly, plaintiffs contend that this issue of fact is a material issue.

2.    *Was the flooding that occurred foreseeable?*

"Where property has been taken by condemnation or acquired by deed, it must be assumed that the owner has been compensated for all reasonably foreseeable damage to his property resulting from the acquisition and the construction of the proposed public improvements. [Citation.]" (*Ellena v. State of California, supra*, 69 Cal.App.3d at p. 254.)

Plaintiffs argue that the flooding which occurred was not foreseeable. They cite to both Mr. Hsu's and Mr. Doolittle's declarations, in which it is said that it is a custom in the industry and a requirement of the county code that new construction must receive,

---

**6**    In oral argument, defendants' counsel agreed that a later action could be brought if the project was not constructed as proposed.

accommodate, and discharge drainage water in substantially the same manner as before the new construction.

As a result, they find that there was no reason anyone would believe that the design of the project would result in increased flooding of the subject property. Accordingly, plaintiffs argue that the flood damage which subsequently occurred was not foreseeable.

3. *Was evidence on flooding presented during the eminent domain trial?*

Citing Mr. Hsu's declaration, plaintiffs argue that there is a factual issue as to whether the subject of possible flooding of the property by the new Route 74 project arose during the eminent domain trial.

Mr. Hsu declares: "There was no issue presented during the trial concerning flooding of the subject property by the Route 74 project. This issue was not raised during the trial. There was no reason to raise the issue of flooding because there was no evidence presented that the construction of the Route 74 project would cause the remainder portion of the subject property to be flooded. It was not reasonably foreseeable."

Mr. Hsu further alleges that the award of severance damages was based on testimony as to the cost of fill dirt needed to raise the property to the new grade level. Mr. Hsu, a former State of California, Department of Transportation civil engineer, also

12

stated that he had no reason to believe that offsite improvements to Route 74 would result in flooding of his property.

Citing the declarations of Mr. Hsu and plaintiffs' attorney, and the attachments to their declarations, plaintiffs argue that the RCTC trial brief in the eminent domain action, the RCTC closing argument, and a declaration of RCTC's attorney show that the severance damages in the eminent domain trial were the result of Mr. Hsu's claim for $150,000 for loss of and replacement of fill dirt,[7] and did not include compensation for any other possible loss, such as flooding. Plaintiffs' attorney states that the declaration of defendants' attorney shows that "there was no issue of severance damages relating to offsite flooding due to the construction of the Route 74 project."[8]

Since there is a serious disagreement regarding the evidence and issues at the eminent domain trial, plaintiffs contend they have demonstrated another material factual issue.

---

[7]    In the eminent domain trial, Mr. Hsu sought $150,000 for loss of fill dirt. The trial court struck $40,000 from this claim. Accordingly, Mr. Hsu was allowed to ask the jury for severance damages of $160,000, consisting of $110,000 for loss of fill dirt and $50,000 for loss in value of the remainder. The jury awarded total severance damages of $98,110.

[8]    The issue may be significant because if, after completion of the project, the landowner's remaining property is damaged by extrinsic causes, he may recover damages in an inverse condemnation action. The foreseeability test only applies when the landowner's parcel is damaged by public works construction on the remainder parcel itself. (*Cox v. State of California, supra*, 3 Cal.App.3d at pp. 308-309.) However, the parties do not focus on this potential issue.

IV

DISCUSSION

Plaintiffs rely on the general principles of summary judgment as stated in *Aguilar*: "First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.]" (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.)

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.)

Also, "[t]he court may not 'grant[]' the defendants' motion for summary judgment 'based on inferences . . . , if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citation.] Neither, apparently, may the court grant their motion based on any evidence from which such inferences are drawn, if so contradicted. That means that, if the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendants' motion." (*Aguilar, supra,* 25 Cal.4th at p. 856.)

14

More specifically, "[t]he trial court may not weigh the evidence in the manner of a fact finder to determine whose version is more likely true. [Citation.] Nor may the trial court grant summary judgment based on the court's evaluation of credibility. [Citation.] Nor may the trial court grant summary judgment for a defendant based simply on its opinion that plaintiff's claims are 'implausible,' if a reasonable factfinder could find for plaintiff on the evidence presented. [Citation.]" (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840.)

Put more succinctly, the trial court considering a summary judgment motion is limited to issue finding. It cannot properly go beyond issue finding to issue determination in deciding a motion for summary judgment. (*Chilson v. P. G. Industries* (1959) 174 Cal.App.2d 613, 616.)

A.      *The Trial Court Determined That the Revised Drainage Facilities Were Not Part of the Project*

But the trial court here did not limit its inquiry to identifying material factual issues. Instead, it engaged in issue determination. For example, the trial court stated that "[i]t is undisputed that the 2003 Plans did not contain Drainage Facilities 66 & 67." It therefore decided that "[p]laintiffs cannot establish that [drainage facilities 66 and 67] were part of the Project as proposed at the time of the underlying action." But these conclusions could only have been reached by disregarding plaintiffs' argument and declarations. Those declarations establish the existence of a material factual issue on this subject.

15

Mr. Doolittle's declaration establishes the necessary factual conflict. Mr. Doolittle explains that he believes the revised plans showing the subject drainage facilities were part of the project because they were dated in 2003, and for other reasons. While the trier of fact could accept the explanation of Mr. Chavez to the effect that these plans were conceptual plans prepared in 2005, and not part of the approved project, it is certainly not required to do so. This is a material factual issue.

The trial court also ruled that plaintiffs' complaint was based solely on the theory that the drainage facilities were not constructed and "[p]laintiffs have asserted no claims that the Project, as proposed and approved at the time of the Eminent Domain action, caused or aggravated the drainage or flooding problems to the remainder."

However, the complaint is based on the theory that defendants failed to construct the project in accordance with the proposed plans, and that the proposed drainage facilities were a part of those plans. The complaint specifically alleges that "[a]s a proximate and direct result of the failure by the defendants, and each of them, to construct the Project as planned and by specifically omitting the above described drainage improvements, the Subject Property during the past three years has been subject to flooding during rain storms."

Section 1263.450 states: "Compensation for injury to the remainder shall be based on the project as proposed." If the subject drainage facilities were included in the project, but not built, plaintiffs can recover for the resulting injuries to their property in an inverse

16

condemnation action. Conversely, plaintiffs cannot recover if the drainage facilities were not included in the project, unless the damages were unforeseeable at the time of trial.

We find that the disputed question of whether the proposed drainage facilities were part of the original approved plans given to plaintiffs and submitted at the eminent domain trial is a material factual issue.

B.       *Foreseeability is a Factual Issue*

There is another material factual issue established by conflicting declarations. RCTC contends that the issue of flood damage arising from the project was foreseeable, that it was raised and determined in the eminent domain action, and that res judicata therefore bars this inverse condemnation action.

Mr. Doolittle and other declarants offer their respective opinions that the flood damage that occurred was unforeseeable, that it was not raised and determined in the eminent domain action, and that principles of res judicata and collateral estoppel do not bar this action.

Forseeability is a factual question: "Estoppel is a question of fact, and the determination of the trier of fact is binding on appeal unless the contrary conclusion is the only one that can reasonably be drawn from the evidence." (*Mehl v. People ex rel Dept. Pub. Wks.* (1975) 13 Cal.3d 710, 715-716.) The proper procedure is shown by our case of *Ellena v. State of California, supra*, 69 Cal.App.3d 245. In that case, trial was bifurcated in a flooding action so that the res judicata defense, including foreseeability issues, would first be tried to the court without a jury.

17

C.    *Determination of Issues Actually Litigated in the Eminent Domain Trial are Factual Determinations*

Questions relating to the testimony and arguments at the prior trial cannot be resolved by piecemeal references to the prior record.  Whether the issue of flood damage was considered and adjudicated in the prior trial is therefore another material factual issue, despite the trial court's conclusion that "[d]rainage and flooding issues were explored in connection with the Eminent Domain action."

Plaintiffs dispute this conclusion by arguing that the only issue concerning flooding in the eminent domain action was related to flooding that would occur if sufficient fill dirt was not used to properly grade the property.

The trial court should not have decided the issue because there are conflicting declarations on this subject.  The conflicting declarations merely raise another material factual issue.

D.    *Conclusion*

The trial court did not limit itself to recognizing factual issues.  Instead, it made factual determinations on summary judgment.  "The function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, not to decide the merits of the issues themselves.  [Citation.]"  (*Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1076-1077.)

In determining whether factual issues exist, the trial court should have applied the general rule that the moving party's papers are strictly construed and the opposing party's

18

papers are liberally construed, with any doubts being resolved in favor of the party opposing the motion. (*Hamburg v. Wal-Mart Stores, Inc., supra*, 116 Cal.App.4th at p. 502.) This is so because of the strong public policy favoring a trial on the merits. (*Ibid.*)

Specifically, the trial court was not free to disregard Mr. Doolittle's declaration, Mr. Hsu's declaration, or Mr. Ross's declaration: "[T]he sole declaration of a party opposing a summary judgment motion which raises a triable issue of fact is sufficient to deny that motion. . . . Further, . . . section 437c, subdivision (e) does not allow a trial court to weigh the credibility of a declaration submitted by the party opposing a summary judgment motion and then grant the motion, except where the declaration is facially so incredible as a matter of law that the moving party otherwise would be entitled to summary judgment." (*Estate of Housley* (1997) 56 Cal.App.4th 342, 359-360, fns. omitted.) Clearly, none of the declarations submitted by plaintiffs were facially incredible, and the trial court erred in disregarding them.

Since there were at least three factual issues presented by the conflicting declarations and documentary evidence, we are compelled to reverse the trial court's judgment. On remand, the trial court is directed to consider plaintiffs' request for attorney fees under section 1036.

19

V

DISPOSITION

The judgment is reversed.  On remand, the trial court is directed to consider appellants' request for attorney fees under section 1036.  Appellants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
                                                                                                    J.

We concur:

McKINSTER_____
          Acting P. J.

KING_____
                    J.